1  Roksana D. Moradi-Brovia (Bar No. 266572)
   W. Sloan Youkstetter (Bar No. 296681)
2  **RHM LAW LLP**
   17609 Ventura Blvd., Suite 314
3  Encino, CA 91316
   **Telephone:** (818) 285-0100
4  **Facsimile:** (818) 855-7013
   roksana@RHMFirm.com
5  sloan@RHMFirm.com

6  *Attorneys for Debtor*
   Special Unit Security Inc.
7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                **LOS ANGELES DIVISION**

11  In re                              ) Case No. 2:22-bk-15668-VZ
                                       )
12                                     ) Chapter 11
    SPECIAL UNIT SECURITY INC.,        )
13                                     ) **NOTICE OF OBJECTION AND**
        Debtor and Debtor-in-Possession. ) **DEBTOR'S OBJECTION TO PROOF**
14                                     ) **OF CLAIM NO. 6 FILED BY**
                                       ) **DEVONNAIR R. JOHNSON;**
15                                     ) **MEMORANDUM OF POINTS AND**
                                       ) **AUTHORITIES; DECLARATION OF**
16                                     ) **EDMON MURADYAN IN SUPPORT**
                                       ) **THEREOF**
17                                     )
                                       ) Date:  July 11, 2023
18                                     ) Time:  11:00 a.m.
                                       ) Place:  Courtroom 1368
19                                     )         255 E. Temple Street
                                       )         Los Angeles, CA 90012
20                                     )
    _____)
21

22      **TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES**

23  **BANKRUPTCY JUDGE; CLAIMANT, DEVONNAIR R. JOHNSON; AND ALL**

24  **CREDITORS AND PARTIES IN INTEREST:**

25          PLEASE TAKE NOTICE that on July 11, 2023 at 11:00 a.m., in Courtroom 1575

26  of the above-entitled Court located at 255 E. Temple Street, Los Angeles, CA 90012,

27  Special Unit Security Inc., the "Debtor" and "Debtor-in-Possession" in the above-stated

28  case, shall and does hereby move this Court for an order disallowing in full Proof of Claim

**RHM LAW LLP**

**1**

("POC") No. 6, filed by Devonnair R. Johnson ("Claimant") in the amount of $500,000, pursuant to 11 U.S.C. §502(b)(1), as set forth herein.

The Claimant alleges that he holds priority claim against the Debtor pursuant to 11 U.S.C. §503(a)(4) for allegations of wages due and owing, statutory penalties, and personal injury.

The Objection is based upon this Notice of Objection and Objection, the attached declaration, all pleadings and records on file in this case, and upon such other evidentiary matters as may be presented to the Court regarding the Objection.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rule 9013-1, any party opposing the relief sought by the Objection must file a written opposition setting forth the facts and law upon which the opposition is based and must appear at the hearing on the Objection. Any factual allegations set forth in such a written response must be supported by competent and admissible evidence.

Any response or opposition to the Objection must be filed with the Court and served Debtor's counsel at least 14 days prior to the scheduled hearing date on the Objection (not excluding Saturdays, Sundays or legal holidays). Such responses, if any, must be served on the Debtor's counsel at the address noted in the upper left-hand corner of the first page of this notice. Any response not timely filed and served may be deemed by the Court to be consent to the granting of the relief requested by the Objection.

Dated: June 9, 2023                    **RHM LAW LLP**

                                       **By:** ___/s/ Roksana D. Moradi-Brovia___
                                       **Roksana D. Moradi-Brovia**
                                       **W. Sloan Youkstetter**
                                       *Attorneys for Debtor*
                                       Special Unit Security Inc.

**RHM LAW LLP**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    <u>INTRODUCTION</u>

The Debtor commenced this bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. §101 <u>et</u> <u>seq</u>. (the "Bankruptcy Code") on October 18, 2022.  The Debtor made the *small business debtor* election under subchapter V on the petition.

Gregory Jones was appointed the subchapter V trustee ("Trustee") on October 19, 2022 [Docket No. 4].

The Debtor is a California corporation, formed in August 2013.  Edmon Muradyan is the Chief Executive Officer and sole shareholder.  The Debtor provides security services throughout Southern California.  It is fully licensed as a private patrol operator by the State of California.

## II.    <u>IDENTIFICATION OF CLAIM</u>

The deadline to file proofs of claim ("POC") and/or proofs of interest in this case was December 27, 2022 (the "Bar Date") [Docket No. 8].

On December 27, 2022, Devonnair R. Johnson ("Claimant") filed POC No. 6, in the amount of $500,000 (the "Claim").  Attached as **<u>Exhibit "A"</u>** and incorporated herein is POC No. 6.  The Claim relates to allegations of wages due and owing, statutory penalties, and personal injury.

## III.    <u>STATEMENT OF FACTS</u>

Claimant began his employment with the Debtor on or about October 9, 2018.  At the time of Claimant's employment with the Debtor, Claimant received, reviewed, and signed a copy of the Claimant's employee handbook, which set rules and regulations of Claimant's employ with Debtor.

At the time of his employment, the Debtor specifically instructed Claimant that he would not be working overtime.  Claimant understood and agreed.

RHM LAW LLP

1    Claimant worked a total of thirty-two hours for the Debtor over a period of less than

2    one month, before he quit on or about October 24, 2018.  From the time of his employment

3    with the Debtor, until the time Claimant quit several weeks later, Claimant was paid an

4    hourly rate of $14.00/hour.

5    Each time Claimant was paid, Claimant signed a payment stub verifying the

6    accuracy of the payment he received and also filled out and signed time sheets showing the

7    hours he has worked, and the breaks he took.  None of the aforementioned payment stubs

8    or time sheets Claimant signed showed that he worked any overtime or was deprived of

9    taking any meal or rest breaks provided under the California Labor Code.

10    On the day Claimant quit, he was told to come to the Debtor's office to pick up his

11    final pay.  Claimant failed to appear at the Debtor's office on the appointed date and time

12    as agreed.

13    The Debtor then arranged for Claimant to come to Debtor's office on November 1,

14    2018 at 4:00 p.m. to collect his final pay.  Claimant finally showed up at 6:00 p.m. just as

15    the office was to close for the evening.

16    During the November 1, 2018 meeting, it was understood and agreed that Claimant

17    would receive $112 as full and final payment.  Claimant disputed the amount that he was

18    due, claiming he was owed an additional $60, despite the fact that Claimant signed a

19    settlement and release that the $112 payment was all that Claimant was due.

20    Despite this fact, Claimant again insisted that he was due additional pay, refused to

21    leave the Debtor's office, and instigated a brief physical altercation which prompted a call

22    by the Debtor to the local Los Angeles County Sheriff's station for assistance.  The

23    Sheriff's arrived and interviewed all the parties to the altercation.  The Los Angeles

24    County Sheriff's office did not recommend charges to be filed against either Claimant or

25    the Debtor and the investigation was closed with no charges filed.

26

27

28

**RHM LAW LLP**

**4**

## IV.    **OBJECTION**

A claim is deemed allowed unless a party in interest objects.  11 U.S.C. §502(a).
Section 502 requires the Court to disallow a claim that "is unenforceable against the debtor
and the property of the debtor, under any agreement or applicable law for a reason other
than because such claim is contingent or unmatured."

Bankruptcy Rule 3001 provides that if a claim is based on a writing, the original or
a duplicate of the writing shall be filed with the claim.

Under Bankruptcy Rule 3001(f), a proof of claim executed and filed in accordance
with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of
the claim.

To overcome the presumption of validity created by a timely-filed proof of claim,
an objecting party must do one of the following: (1) object based on legal grounds and
provide a memorandum of points and authorities setting forth the legal basis for the
objection; or (2) object based on a factual ground and provide sufficient evidence (usually
in the form of declarations under penalty of perjury) to create triable issues of fact.  *In re
G.I. Indus., Inc.,* 204 F.3d 1276, 1280 (9th Cir. BAP 2000); *In re Medina,* 205 B.R. 216,
222 (9th Cir. BAP 1996); *In re Hemingway Transport, Inc.,* 993 F.2d 915, 925 (1st Cir.
1993).

Upon objection, a proof of claim provides "some evidence as to its validity and
amount" and is "strong enough to carry over a mere formal objection without more."  See
*Lundell v. Anchor Constr. Spec., Inc.,* 223 F.3d 1035, 1039 (9th Cir. 2000) [citing *In re
Holm,* 931 F.2d 620, 623 (9th Cir. 1991)].

An objecting party bears the burden and must "show facts tending to defeat the
claim by probative force equal to that of the allegations of the proofs of claim themselves."
*In re Holm,* 931 F.2d at 623.

RHM LAW LLP

1    When the objector has shown enough evidence to negate one or more facts in the

2    proof of claim, the burden shifts back to the claimant to prove the validity of the claim by a

3    preponderance of evidence.  See *Lundell,* 223 F.3d at 1039.

4    <u>The Claimant has the ultimate burden of proving the validity of its claim.</u>

5

6    A.    *The Claim is Unliquidated*

7    A debt is unliquidated unless the amount of the debt is "readily determinable."

8    *Slack v. Wilshire Ins. Co.* (*In re Slack*), 187 F.3d 1070, 1073 (9th Cir. 1999).  "The

9    definition of 'ready determination' turns on the distinction between a simple hearing to

10    determine the amount of a certain debt, and an extensive and contested evidentiary hearing

11    in which substantial evidence may be necessary to establish amounts or liability."  *In re*

12    *Slack*, 187 F.3d at 1073-74 (*quoting Fed. Deposit Ins. Corp. v. Wenberg* (*In re Wenberg*),

13    94 B.R. 631, 633 (9th Cir. BAP 1988), *aff'd & adopted*, 902 F.2d 768 (9th Cir. 1990)); *see*

14    *also In re Nicholes*, 184 B.R. at 89 ("The test for 'ready determination' is whether the

15    amount due is fixed or certain or otherwise ascertainable by reference to an agreement or

16    by a simple computation.").

17    Here, the Claimant fails to attach any documentation as to how the claim amount of

18    $600,000 was ascertained and/or calculated.

19    The Claimant also asserts that the basis for the claim was overtime wages,

20    lunch/break penalties, and late penalties.  However, the Debtor specifically instructed

21    Claimant that he would not be working overtime.  Claimant understood and agreed.

22    Each time Claimant was paid, Claimant signed a payment stub verifying the

23    accuracy of the payment he received and also filled out and signed time sheets showing the

24    hours he has worked, and the breaks he took.  None of the aforementioned payment stubs

25    or time sheets Claimant signed showed that he worked any overtime or was deprived of

26    taking any meal or rest breaks provided under the California Labor Code.  Thus, the

27    Claimant had no opportunity to earn overtime.

28

RHM LAW LLP

**6**

1    The only amount that would be fixed or ascertainable are the actual wages earned

2  during the Claimant's employment.  However, the claim explicitly encompasses more that

3  must be determined.  Therefore, the claim is unliquidated.

4

5    *B.  The Claim is Unenforceable Under State Law*

6    As a preliminary matter, Claimant's civil lawsuit is comprised of sixteen causes of

7  action; eight of which are alleged wage and hour violations regarding record keeping,

8  payment terms, as well as payment for overtime, meal and rest breaks.  The remaining

9  causes of action revolve around the Debtor's alleged assault and battery against Claimant

10  and the corresponding infliction of emotional distress, as well as separate claims for

11  conversion, false imprisonment and unfair business practice.

12    With regard to the wage and hour violation allegations, Claimant's allegations are

13  undermined by documents Claimant signed (1) showing he never worked overtime and

14  was not entitled to such, and (2) showing that Claimant was afforded and actually took the

15  breaks to which an employee is entitled under the California Labor Code.

16    Moreover, Claimant has signed an exit/release form in which he affirms the fact that

17  he was paid for all the hours worked and that he had taken the breaks to which he was

18  entitled.  *See Shaw v. City of Sacramento*, 250 F3d 1289, 1292-1293 (9th Cir. 2001)

19  (applying Calif. law)— which addressed the effect of written release: and held that, in

20  general, a written release extinguishes any obligation covered by its terms, provided it was

21  not obtained by fraud, duress or undue influence, and also that the release of "all claims …

22  arising from or related to … employment and departure from employment" included

23  discrimination and defamation claims although employee believed otherwise.

24    In addition, Claimant abruptly quit his job with the Debtor and was contacted by

25  Debtor to come to Debtor's office approximately 48 hours later to receive his final pay.

26  *See* Labor Code, §202 (which states that quitting employees normally must be paid within

27  72 hours.).

28

**RHM LAW LLP**

1    In this case, Claimant failed to show up at the appointed date and time.  When

2  Claimant did appear – later than scheduled – he instigated a physical altercation that was

3  ultimately quelled by local law enforcement.  As such, Claimant actions and subsequent

4  claims may be subject to the "unclean hands" doctrine defense which "closes the

5  courthouse door" to one "tainted with inequitableness or bad faith relative to the matter in

6  which he seeks relief, however improper may have been the behavior of the defendant."

7  *Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 CA4th 620, 638).  Unclean hands

8  require inequitable conduct by plaintiff in connection with the matter in controversy and

9  provides a complete defense to plaintiff's action.  *Dickson, Carlson & Campillo v. Pole*

10  (2000) 83 CA4th 436, 446.

11

12                              **V.    CONCLUSION**

13    WHEREFORE, for the reasons set forth herein, Debtor respectfully request that this

14  Court:

15    (1)    Sustain its objection to Claim No. 6;

16    (2)    In the alternative, determine the reasonableness of the claim by setting an

17  evidentiary hearing and allowing the parties to conduct discovery; *and*

18    (3)    For such other and further relief as is just and proper under the

19  circumstances.

20

21  Dated:  June 9, 2023                    **RHM LAW LLP**

22

23                      **By:** _____/s/ Roksana D. Moradi-Brovia_____
                               **Roksana D. Moradi-Brovia**
24                             **W. Sloan Youkstetter**
                               *Attorneys for Debtor*
25                             Special Unit Security Inc.

26

27

28

RHM LAW LLP

**8**

## **DECLARATION OF EDMON MURADYAN**

I, EDMON MURADYAN, declare as follows:

1.    I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto.  Where facts are alleged upon information and belief, I believe them to be true.

2.    I am the Chief Executive Officer, and 100% shareholder, and a custodian of records of Special Unit Security Inc., the "Debtor" and "Debtor-in-Possession" in the above-captioned case.  I am authorized to make decisions for the Debtor.

3.    I am a custodian of the Debtor's books, records, and documents.  The Debtor maintains records of its transactions in the regular course of business, and it is the Debtor's practice and procedure to maintain records and to record transactions, acts, and events at or about the time the transaction occurs.  The Debtor relies on these records in connection with its business dealings.

4.    The Debtor commenced this bankruptcy case on October 18, 2022.  The Debtor made the *small business debtor* election under subchapter V on the petition.

5.    Gregory Jones was appointed the subchapter V trustee ("Trustee") on October 19, 2022 [Docket No. 4].

6.    The Debtor is a California corporation, formed in August 2013. The Debtor provides security services throughout Southern California.  It is fully licensed as a private patrol operator by the State of California.

7.    The deadline to file proofs of claim ("POC") and/or proofs of interest in this case was December 27, 2022 (the "Bar Date") [Docket No. 8].

8.    On December 27, 2022, Devonnair R. Johnson ("Claimant") filed POC No. 6, in the amount of $500,000 (the "Claim").  Attached as **Exhibit "A"** and incorporated

RHM LAW LLP

**9**

herein is the POC No. 6.  The Claim relates to allegations of wages due and owing, statutory penalties, and personal injury.

9.      Claimant began his employment with the Debtor on or about October 9, 2018.  At the time of Claimant's employment with the Debtor, Claimant received, reviewed, and signed a copy of the Claimant's employee handbook, which set rules and regulations of Claimant's employ with Debtor.

10.     At the time of his employment, we instructed Claimant that he would not be working overtime.  Claimant understood and agreed.

11.     Claimant worked a total of thirty-two hours for the Debtor over a period of less than one month, before he quit on or about October 24, 2018.  From the time of his employment with the Debtor, until the time Claimant quit several weeks later, Claimant was paid an hourly rate of $14.00/hour.

12.     Each time Claimant was paid, Claimant signed a payment stub verifying the accuracy of the payment he received and also filled out and signed time sheets showing the hours he has worked, and the breaks he took.  None of the aforementioned payment stubs or time sheets Claimant signed showed that he worked any overtime or was deprived of taking any meal or rest breaks provided under the California Labor Code.

13.     On the day Claimant quit, he was told to come to the Debtor's office to pick up his final pay.  Claimant failed to appear at the office on the appointed date and time as agreed.

14.      We then arranged for Claimant to come to Debtor's office on November 1, 2018 at 4:00 p.m. to collect his final pay.  Claimant finally showed up at 6:00 p.m. just as the office was to close for the evening.

15.     During the November 1, 2018 meeting, it was understood and agreed that Claimant would receive $112 as full and final payment.  Claimant disputed the amount that he was due, claiming he was owed an additional $60, despite the fact that Claimant signed a settlement and release that the $112 payment was all that Claimant was due.

RHM LAW LLP

**10**

16.    Despite this fact, Claimant again insisted that he was due additional pay, refused to leave the Debtor's office, and instigated a brief physical altercation with me which prompted a call by us to the local Los Angeles County Sheriff's station for assistance.

17.    The Sheriff's arrived and interviewed all the parties to the altercation.  The Los Angeles County Sheriff's office did not recommend charges to be filed against either Claimant or me and the investigation was closed with no charges filed.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed June _7_, 2023, at _Compton_, California.

By: _____
Edmon Muradyan
*Declarant*

RHM LAW LLP

**11**

# EXHIBIT "A"

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Special Unit Security Inc. |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:22-bk-15668-VZ |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

---

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

Devonnair R. Johnson
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Yana G. Henriks, Esq. / McMurray Henriks, LLP
Name

811   Wilshire Boulevard, Suite 1640
Number   Street

Los Angeles      CA      90017
City      State      ZIP Code

Contact phone 323-931-6200

Contact email yhenriks@law-mh.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**Where should payments to the creditor be sent?** (if different)

Name

Number      Street

City      State      ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

---

Official Form 410        **Proof of Claim**        page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

---

**7. How much is the claim?**

$_____500,000.00__ . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Wages due and owing, statutory penalties, personal injury

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No <br> ☐ Yes. *Check one:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  <u>12/27/2022</u>
                MM / DD / YYYY

<u>/s/ [Yana G. Henriks, Esq.]</u>
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Yana | Gayane | Henriks |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Attorney for Creditor Devonnair R. Johnson |
|---|---|

| Company | McMurray Henriks, LLP |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 811 | Wilshire Boulevard, Suite 1640 | | |
|---|---|---|---|---|
| | Number | Street | | |
| | Los Angeles | | CA | 90017 |
| | City | | State | ZIP Code |

| Contact phone | 323-931-6200 | Email | yhenriks@law-mh.com |
|---|---|---|---|

Electronically FILED by Superior Court of California, County of Los Angeles on 06/20/2019 03:58 PM Sherri R. Carter, Executive Officer/Clerk of Court, by K. Vargas,Deputy Clerk

Randy H. McMurray, Esq. (SBN 126888)
Email: RMcmurray@law-mh.com
Yana G. Henriks, Esq. (SBN 250638)
Email: YHenriks@law-mh.com
Rene M. Maldonado, Esq. (SBN 289739)
Email: RMaldonado@law-mh.com
**McMURRAY HENRIKS, LLP**
5670 Wilshire Blvd., Suite 1450
Los Angeles, California 90036
Telephone: (323) 931-6200
Facsimile: (323) 931-9521
Attorney for Plaintiff DEVONNAIR R. JOHNSON

## SUPERIOR COURT OF THE STATE FOR CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES -- CENTRAL DISTRICT

| | |
|---|---|
| DEVONNAIR R. JOHNSON, an individual, | Case No: 19STCV21731 |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | 1) Assault; |
| | 2) Battery; |
| | 3) False Imprisonment; |
| SPECIAL UNIT SECURITY INC D/B/A | 4) Conversion; |
| MARSHALL SECURITY TRAINING | 5) Negligence; |
| ACADEMY & RANGE, a California | 6) Misclassification of Employees; |
| corporation; EDMON MURADYAN, an | 7) Failure to Provide Meal Periods; |
| individual; and DOES 1 through 100, | 8) Failure to Provide Rest Breaks; |
| inclusive, | 9) Failure to Pay Overtime Wages; |
| Defendants. | 10) Failure to Pay All Wages Owed Every Pay Period; |
| | 11) Failure to Pay All Wages Upon Separation; |
| | 12) Failure to Furnish Timely and Accurate Wage Statements; |

1

COMPLAINT

13) Failure to Maintain Employment
    Records;

14) Violation of California's Unfair
    Competition Law ("UCL"), Bus. &
    Prof. Code § 17200 *et seq.*

15) Intentional Infliction of Emotional
    Distress; and

16) Negligent Infliction of Emotional
    Distress.

**DEMAND FOR JURY TRIAL**

Plaintiff DEVONNAIR R. JOHNSON alleges as follows:

<u>PARTIES</u>

1.    At all times mentioned herein, Plaintiff DEVONNAIR R. JOHNSON (hereinafter "Plaintiff" or "JOHNSON") was and is a natural person residing in the County of Los Angeles.

2.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned herein defendant SPECIAL UNIT SECURITY INC D/B/A MARSHALL SECURITY TRAINING ACADEMY & RANGE (hereinafter referred to as "MARSHALL SECURITY"), is a California corporation, with its principal place of business located at 1457 W. El Segundo Blvd., Compton, California 90222, and is doing business in the State of California.

3.    Plaintiff is informed and believes, and based thereon alleges that at all times mentioned herein defendant EDMON MURADYAN (hereinafter referred to as "MURADYAN"), was and is a natural person residing in the County of Los Angeles.

4.    Plaintiff is informed and believes, and based thereon alleges that DOES 1-100 are persons or entities whose names and capacities are unknown to Plaintiff at this time.  Plaintiff

alleges that DOES 1-100 are in some way involved in the actions complained of herein as either independent actors, or as agents or principals of the other named defendants. Plaintiff will amend this complaint to allege the true identities, capacities and roles of DOES 1-100 as and when they are ascertained.

5.    At all times relevant to this action, each defendant and those fictitiously named, was the agent, servant, employee, partner, joint venturer, assignees or surety of the other defendants and was acting within the scope of said agency, employment, partnership, venture, or suretyship, with the knowledge and consent or ratification of each of the other defendants in doing the things alleged in this complaint.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court. The acts and omissions complained of in this action took place in the State of California, and at least one Defendant resides in the state of California. Venue is proper because this is an individual and representative action, the acts and/or omissions complained of took place, in whole or in part within the venue of this Court, and/or one or more Defendant resides within the venue of this court.

## GENERAL ALLEGATIONS

7.    Plaintiff is informed and believes, and based thereon alleges that MARSHALL SECURITY is engaged in the business of security guard and patrol services. MARSHALL SECURITY has a website URL: https://www.marshallsecurityca.com/. In addition, MARSHALL SECURITY provides training to persons desiring to obtain a California Guard Card License and Firearms Permit. Plaintiff is further informed and believes that MARSHALL SECURITY is licensed with the Federal Bureau of Alcohol, Tobacco, Firearms & Explosive as a Dealer. MARSHALL SECURITY hires licensed armed guards and deploys them at various businesses, establishments, localities for security and patrolling.

COMPLAINT

8.     On or around October 8, 2019, MARSHALL SECURITY hired Plaintiff as an armed security guard to work two days per week. Plaintiff was interviewed and hired by Tim, who is presumably the son of Defendant MURADYAN.

9.     At the time that he was hired, Plaintiff requested that he be paid wages at the rate of $18/hr.  However, Tim, the gentlemen that interviewed and hired Plaintiff, stated that he could only pay Plaintiff $14/hr.  Tim stated that no taxes or other deductions would be taken out of Plaintiff's wages, and opined that Plaintiff would be better off receiving the $14/hr. as opposed to $18/hr. with taxes and other deductions taken out of his pay check. Tim also stated that Plaintiff would be paid on a weekly basis.

10.     Plaintiff was given the "new hire package" to review and sign, which he filled out and signed.  Plaintiff was asked to start his job duties on or around October 11, 2018, in the night shift from 2:00 pm to 2:00 am.

11.     On or around October 11, 2018, Plaintiff reported for duty at a Grand 420, a Marijuana Dispensary, located at 5350 2nd Avenue, Suite E&F, Los Angeles CA 90043, for night guard duties.  At that location there was no time sheet, punch in card or any other way Plaintiff could clock in and keep his time for the hours worked.  The only way Plaintiff could let his employer know that he reported for work at the assigned location was by calling Tim from his cell phone to let him know that he has started his shift.

12.     When Plaintiff began his new job assignment at Grand 420, there was another security guard at work till about 6:00 pm.  When that security guard left at 6:00 pm, Plaintiff was all by himself till 2:00 am, until his shift ended.  Plaintiff's duties included to check the Picture IDs of all patients who visited the Grand 420 Marijuana Dispensary to ensure that they were over 21 years of age.  In addition, Plaintiff would scan new patients into the system, if they were not already scanned.  As a result, Plaintiff did not take his rest breaks and meal breaks because he was the only security guard on duty after 6:00 pm and there was no one to cover him during his breaks and lunch.  The other non-guard staff present at Grand 420 after 6:00 pm were David, the manager, and two other female workers.

**COMPLAINT**

13.     On or about October 16, 2018, it had been one week since Plaintiff started working for MARSHALL SECURITY.  It was time for Plaintiff to get his weekly pay check. Therefore, Plaintiff called Tim and asked him if he could come over and pick up his pay check. Upon Plaintiff's request, Tim asked him to come to MARSHALL SECURITY's office either before his shift started, or in the alternative, Plaintiff should drop off his timesheets in the drop box, after his night shift and the HR would process his pay check the next day. Tim told Plaintiff if he wanted to get paid, it was his responsibility to turn in his timesheets.  This was very troubling for Plaintiff because he had to drive an extra hour, spend money on gas, in order to submit his timesheets, and MARSHALL SECURITY would not pay him for that time and gas. Plaintiff told Tim that he was unable to come to MARSHALL SECURITY's office because he worked another job during the day.

14.     On the following week, on or about October 24, 2018, Plaintiff's next weekly pay check was due, even though Plaintiff had still not received payment for the prior weekly pay period. Plaintiff called Tim and asked him if he could come to pick up his pay check. Tim replied that Plaintiff could come between 4:00 pm to 6:00 pm.  When Plaintiff reached MARSHALL SECURITY's office and submitted his time cards, it appeared they did not appreciate the form in which Plaintiff filled out his time cards.  Plaintiff submitted four sheets of paper, two pages for each week.  Plaintiff was never provided any particular format to fill out his time sheets, therefore he devised his own format.  Plaintiff filled all 12 hours on one sheet, which he was told was wrong.  MARSHALL SECURITY's HR staff informed Plaintiff that he was required to fill out two separate time sheets for each day. The HR staff stated that Plaintiff was required to include only 8 hours of his 12 hour shift on one time sheet and the remaining four hours should be included on the second time sheet. The MARSHAL SECURITY HR staff specifically stated that a single time sheet should never contain entries for more than 8 hours per day or more than 40 hours per week.  Plaintiff was told by the MARSHAL SECURITY HR staff that failure to fill out the timesheet correctly would result in Plaintiff being penalized $1 per time sheet, printing charges.

15.     Plaintiff filled out and submitted his time sheets according to the HR's requirement. Upon receiving payment, Plaintiff noticed that he did not receive any overtime payment. Plaintiff questioned why he was not paid overtime.  Tim and another staff member present told him that he will not be paid overtime because he was being paid in cash. Immediately thereafter, Tim's father MURADYAN, who is addressed as "Chief" came there and said that "you get what is yours."

16.     When Plaintiff did not receive the correct amount of wages, he informed MURADYAN that he would be resigning from his position as a armed security guard for MARSHALL SECURITY.  MURADYAN then asked Plaintiff to accompany him to his office. Inside his office, MURADYAN gave Plaintiff $168.00.  Plaintiff asked him for the pay for the other days. On that MURADYAN told him that he will get paid on November 1, 2018. MURADYAN told Plaintiff to pick up his pay check on November 1, 2018 at 5:00 p.m.

17.     On or about November 1, 2018, at about 5:00 p.m., Plaintiff showed up at MARSHALL SECURITY's office to pick up the balance of his pay which was unpaid.  At that time he was accompanied by his wife, who was sitting in the car in the parking lot.  Plaintiff went inside MARSHALL SECURITY's office with the timesheets and cell phone in his hand. The lady at the front desk asked Plaintiff what he was there for.  Plaintiff replied he was there to pick up the balance of his pay, and the lady said "Pay Day was on November 5, 2018."  Plaintiff stated that MURADYAN specifically asked him to come pick up his pay check on November 1, 2018.

18.     While Plaintiff was talking to the front desk receptionist, MURADYAN overheard their conversation and came there with two men.  Plaintiff believes one of the two men was MURADYAN's other son.  MURADYAN took Plaintiff's timesheets, and stated that the timesheets were done wrong.  Plaintiff replied that initially the timesheets were not prepared as per the correct format, but later he filled out the correct ones as instructed by the HR. MURADYAN then made copies of the timesheets while both men were standing inside the room watching Plaintiff.  Then MURADYAN asked Plaintiff to come to his office in the back.

**COMPLAINT**

1    Plaintiff was apprehensive that MURADYAN might assault him given his rude attitude,

2    therefore he asked whether there will be other men in his office too.

3        19.    Plaintiff then entered MURADYAN's office and sat on the chair, with two men

4    sitting on his left and two other men standing on Plaintiff's left. MURADYAN was sitting in

5    front. MURADYAN gave a paper to Plaintiff to sign. After reading the paper, Plaintiff told

6    MURADYAN that he didn't agree to the writing and he does not feel comfortable to sign the

7    paper. MURADYAN said "if you don't sign this paper, you won't get paid." Plaintiff

8    reluctantly signed that paper under duress. Then MURADYAN gave him another paper which

9    stated: "I (Devonnair Johnson) have received all my money that the company owes me."

10   Plaintiff signed this document under duress, and gave it to MURADYAN. Then MURADYAN

11   gave Plaintiff a third paper, which stated in pertinent part that Plaintiff was free to take two ten-

12   minute breaks at any time.

13       20.    Plaintiff signed all the papers given to him, though this was not done voluntarily,

14   rather it was under duress, because MURADYAN threatened Plaintiff that if he will not sign

15   those papers, he will not receive his money. Once Plaintiff handed all the signed papers to

16   MURADYAN, he then pulled out $420 from his duffel bag, and gave it to Plaintiff. Plaintiff

17   disputed this amount and told MURADYAN that for 36 hours the total amount he was to receive

18   was $504 and not $420. Plaintiff said that he needs to get paid for 12 hour shifts for three days.

19   MURADYAN said that he has to check if Plaintiff was there for 12 hours on all three shifts.

20   Upon that Plaintiff said that he is entitled to $14/hr as promised. When Plaintiff claimed his full

21   wages, MURADYAN got infuriated and said, "I DON'T HAVE TO PAY YOU ANYTHING,

22   YOU HAVE ALREADY SIGNED THE PAPER THAT YOU HAVE RECEIVED ALL YOUR

23   MONEY."

24       21.    Plaintiff said that he will record their conversation on his cell phone video

25   because that was the only means to record evidence about their failure to pay his wages and

26   fraudulently making him sign the documents. Defendant MURADYAN and the other 4 men

27   immediately pounced on him and forcibly took away Plaintiff's cell phone. The cell phone was

28   destroyed and never returned. The cell phone contained very personal information, photos and

7

**COMPLAINT**

video, which are permanently lost.  Those photos and videos stored on Plaintiff's cell phone are
priceless to Plaintiff and cannot be compensated in terms of money.

      22.    Thereafter, the four men present in the room grabbed Plaintiff by his arms and
removed him from the chair he was sitting on.  One of them put his arm around Plaintiff's neck
and did a choke hold.  All these men were trained in martial arts. MURADYAN and one other
man punched Plaintiff.  They threw Plaintiff to the ground. MURADYAN put his foot on
Plaintiff's neck and face and pinned it to the floor.  MURADYAN's son had a Taser gun.
Plaintiff was tazed 5 times.  As a result, Plaintiff was in severe pain.  One taser shot hit Plaintiff
close to his heart.  Plaintiff fell on the ground. MURADYAN pressed Plaintiff's neck with his
shoe while Plaintiff was down on the floor. The other men held Plaintiff's arms and legs. They
then handcuffed Plaintiff.

      23.    Police came in about 20 minutes later. MURADYAN made false accusations to
police against Plaintiff, and as a result Police arrested Plaintiff and confined Plaintiff in the
Police car for over one hour.  Plaintiff was not taken to hospital despite the fact that Plaintiff was
in grievous pain.

      24.    After investigation, the Police found that Plaintiff had committed no crime
whatsoever. The Police also found that Plaintiff had come to MARSHALL SECURITY's office
to pick up his pay check. Police released Plaintiff after about one hour.

      25.    Plaintiff sought medical treatment from hospital. Plaintiff has suffered permanent
injury to his body and mind due to the Taser gun shots.  To date Plaintiff has not recovered from
the Taser injuries.

      26.    As a result of Defendants' conduct as alleged herein, Plaintiff is damaged in that
he has suffered physical, mental and emotional injury due to wrongful acts and/or omissions of
Defendants, and each of them.

## FIRST CAUSE OF ACTION

### ASSAULT

(As to All Defendants and DOES 1 to 100)

27.    Plaintiff re-alleges and incorporate by reference those allegations appearing in paragraphs 1 to 26 of this complaint as though fully set forth therein.

28.    Defendant MURADYAN, and DOES 1-20 intended to cause harmful or offensive contact to Plaintiff, and placed Plaintiff in imminent apprehension of harmful or offensive contact.

29.    Plaintiff reasonably believed that he will be harmed by Defendant MURADYAN and DOES 1-20 when they escorted him into MURADYAN's room and four men surrounded him. Defendant MURADYAN's threatened Plaintiff of harmful consequences for claiming his wages. At no time did Plaintiff consent to Defendant MURADYAN, and DOES 1-20's intention to cause him a harmful or offensive contact.

30.    As a direct and proximate result of Defendant MURADYAN and DOES 1-20's conduct, Plaintiff was placed in imminent apprehension of harmful and offensive contact, and as a consequence suffered severe emotional distress and other injuries to his person, in an amount to be shown according to proof.

31.    As a direct, legal and proximate result of the actions of Defendant MURADYAN and DOES 1-20, Plaintiff sustained serious temporary and permanent injuries to his person and will suffer a loss of income and benefits, all to his damage in an amount to be shown according to proof. Plaintiff also suffered mental anguish, physical distress and humiliation. Because of Defendant MURADYAN and DOES 1-20's wrongful actions, Plaintiff has suffered damages in an amount within the Court's general jurisdiction according to proof.

32.    Plaintiff was compelled to and did seek medical treatment, and did incur related expenses. Plaintiff is informed and believes, and thereupon alleges, that he will necessarily, by reason of his injuries, incur additional expenses for an indefinite period of time in the future, all to Plaintiff's damage in a sum to be shown according to proof. In addition, Plaintiff has lost income, since he was unable to work for many months because of mental anguish, emotional distress, anxiety and injury to his pride and dignity.

33.    At all times relevant hereto and in all matters described herein, Defendant MURADYAN and DOES 1-20 were acting within the course and scope of their employment

with MARSHALL SECURITY and as such MARSHALL SECURITY is vicariously liable for the general and special damages arising from Defendant MURADYAN and DOES 1-20's tortious conduct.

34.     Defendant and each one of them, acted with malice, fraud and/or oppression and in conscious and reckless disregard of Plaintiff's rights with the intent to cause injury and emotional distress to Plaintiff, and therefore, warrants the award of punitive damages pursuant to *California Civil Code* §3294 in an amount sufficient to punish all Defendants.

## SECOND CAUSE OF ACTION

### BATTERY

(As to All Defendants and DOES 1 to 100)

35.     Plaintiff re-alleges and incorporates by reference those allegations appearing in paragraphs 1 to 34 of this complaint as though fully set forth therein.

36.     Defendant MURADYAN and DOES 1-20 made physical contact with Plaintiff with the intent to harm or offend him. Plaintiff did not consent to the contact. Plaintiff was harmed and offended by Defendant MURADYAN and DOES 1-20's harmful contact with him. Defendant MURADYAN and DOES 1-20 intentionally and recklessly did acts with the purpose to cause harm to Plaintiff's person, which resulted in harmful contact with the Plaintiff's person, including but not limited to: grabbing and punching on his face; using a Taser gun to electrocute Plaintiff; handcuffing Plaintiff when he was in pain and not providing him medical help even though he suffered Taser gun injuries. Plaintiff suffered serious physical and emotional injury.

37.     Defendants, and each one of them, aided, abetted and/or conspired to batter Plaintiff. In performing the acts described herein, Defendant acted in concert, with intent to bring bodily injuries to Plaintiff, such as with a Taser gun. Thus, Defendants acted with the intent to make a harmful and offensive contact with Plaintiff's person.

38.     The injuries suffered by Plaintiff are the actual and proximate cause of Defendants' conduct. But for Defendants' conduct, Plaintiff would not have suffered the injury. The injury is very foreseeable result of Defendants' conduct. Plaintiff has suffered physical

COMPLAINT

injury, emotional injury, humiliation, embarrassment, mental and emotional distress, anxiety, economic harm, and hurt to his dignity and respect.

39.     At all times relevant hereto and in all matters described herein, Defendant MURADYAN and DOES 1-20 were acting within the course and scope of their employment with MARSHALL SECURITY and as such MARSHALL SECURITY is vicariously liable for the general and special damages arising from Defendant MURADYAN and DOES 1-20's tortious conduct.

40.     Defendant and each one of them, acted with malice, fraud and/or oppression and in conscious and reckless disregard of Plaintiff's rights with the intent to cause injury and emotional distress to Plaintiff, and therefore, warrants the award of punitive damages pursuant to *California Civil Code* §3294 in an amount sufficient to punish all Defendants.

41.     As a result of Defendants' conduct, Plaintiff is entitled to damages according to proof at trial.  Plaintiff was required to and did employ physicians to examine, treat, and care for him, and incurred additional medical expenses for medical treatment.  Plaintiff is informed and believes and thereon alleges that he will incur additional medical expenses in the future, the exact amount of which is unknown at this time.

## THIRD CAUSE OF ACTION

## FALSE IMPRISONMENT

(As to All Defendants and DOES 1 to 100)

42.     Plaintiff re-alleges and incorporates by reference those allegations appearing in paragraphs 1 to 41 of this complaint as though fully set forth therein.

43.     Defendant MURADYAN and DOES 1-20 did willfully and wrongfully interfere with Plaintiff's freedom of movement and confined him against his will by violently grabbing Plaintiff by the arms, punching him on his face, throwing him to the ground, choke hold on his neck, tazing him and hand cuffing him for more than 30 minutes before the Police arrived. In addition, Plaintiff was detained by the Police for more than one hour upon wrong and misleading information provided by Defendant MURADYAN and DOES 1-20 to the Police. Defendants violated Plaintiff freedom by not permitting him to move for an appreciable period of time.  At

COMPLAINT

1  no time did Plaintiff consent to Defendant MURADYAN and DOES 1-20 actions.  Nor did

2  Defendant MURADYAN and DOES 1-20 have a lawful reason to interfere with Plaintiff's

3  freedom of movement. Furthermore, Defendant MURADYAN and DOES 1-20 prevented

4  Plaintiff from seeking medical treatment for the injuries suffered due to tazer shots. Defendants

5  took away Plaintiff's cell phone, as a result, he could not call 911 for ambulance.

6      44.    As a direct, legal and proximate result of the actions of Defendant MURADYAN

7  and DOES 1-20, Plaintiff sustained serious temporary and permanent injuries to his person and

8  will suffer a loss of income and benefits, all to his damage in an amount to be shown according

9  to proof.  Plaintiff also suffered mental anguish, physical distress and humiliation. Because of

10  Defendant MURADYAN and DOES 1-20's wrongful actions, Plaintiff has suffered damages in

11  an amount within the Court's general jurisdiction according to proof.

12      45.    Plaintiff was compelled to and did seek medical treatment, and did incur related

13  expenses. Plaintiff is informed and believes, and thereupon alleges, that he will necessarily, by

14  reason of his injuries, incur additional expenses for an indefinite period of time in the future, all

15  to Plaintiff's damage in a sum to be shown according to proof.  In addition, Plaintiff has lost

16  income, since he was unable to work for many months because of mental anguish, emotional

17  distress, anxiety and hurt to his pride and dignity.

18      46.    The injuries suffered by Plaintiff are the actual and proximate cause of

19  Defendants' conduct. But for Defendants' conduct, Plaintiff would not have suffered the injury.

20  The injury is very foreseeable result of Defendants' conduct.

21      47.    At all times relevant hereto and in all matters described herein, Defendant

22  MURADYAN and DOES 1-20 were acting within the course and scope of their employment

23  with MARSHALL SECURITY and as such MARSHALL SECURITY is liable for the general

24  and special damages arising from Defendant MURADYAN and DOES 1-20's tortious conduct.

25      48.    Defendant and each one of them, acted with malice, fraud and/or oppression and

26  in conscious and reckless disregard of Plaintiff's rights with the intent to cause injury and

27  emotional distress to Plaintiff, and therefore, warrants the award of punitive damages pursuant to

28  *California Civil Code* §3294 in an amount sufficient to punish all Defendants.

COMPLAINT

49.     As a result of Defendants' conduct, Plaintiff is entitled to damages according to proof at trial.   Plaintiff was required to and did employ physicians to examine, treat, and care for him, and incurred additional medical expenses for medical treatment. Plaintiff is informed and believes and thereon alleges that he will incur some additional medical expenses the exact amount of which is unknown at this time.

## FOURTH CAUSE OF ACTION

## CONVERSION

(As to All Defendants and DOES 1 to 100)

50.     Plaintiff re-alleges and incorporate by reference those allegations appearing in paragraphs 1 to 49 of this complaint as though fully set forth therein.

51.     Plaintiff owned and possessed a Cell Phone which contained valuable information, photos and videos. The photos and videos concerned his personal family moments taken on special occasions such as birthdays, anniversaries and other family events. Those photos and videos are priceless for Plaintiff and its value cannot be determined.

52.     Defendant MURADYAN and DOES 1-20 substantially interfered with Plaintiff's property by knowing and intentionally taking possession of the Cell Phone with force. The Cell Phone was permanently lost and destroyed.

53.     Plaintiff did not consent to Defendants taking his Cell Phone.

54.     As a result of Defendants' willful conduct Plaintiff is harmed, in that he has permanently lost the possession and ownership of the Cell Phone containing valuable photos, videos and information, including but not limited to text messages.

55.     Plaintiff is entitled to damages according to proof at trial. The injuries suffered by Plaintiff are the actual and proximate cause of Defendants' conduct.  But for Defendants' conduct, Plaintiff would not have suffered the injury. The injury is very foreseeable result of Defendants' conduct.  Plaintiff has suffered physical injury, emotional injury, humiliation, embarrassment, mental and emotional distress, anxiety, economic harm, and hurt to his dignity and respect.

## FIFTH CAUSE OF ACTION

13

COMPLAINT

**NEGLIGENCE**

(As to All Defendants and DOES 1 to 100)

56.     Plaintiff re-alleges and incorporates by reference those allegations appearing in paragraphs 1 to 55 of this complaint as though fully set forth therein.

57.     Each Defendant has a duty to act as a reasonable and prudent adult person would act under the same or similar circumstances so as not to cause injury or harm to Plaintiff.

58.     Plaintiff is informed and believes and thereon alleges that Defendant MURADYAN and DOES 1-20 and its agents, employees and/or representatives breached their duty to Plaintiff by failing to protect Plaintiff from suffering injury of the type that would only occur due to failure to adhere to the standard of care required by Defendants.

59.     The injuries suffered by Plaintiff are the actual and proximate cause of Defendants' conduct. But for Defendants' failure, Plaintiff would not have suffered the injury. The injury is very foreseeable result of Defendants' failure.

60.     As a result of Defendants' negligence, Plaintiff is entitled to damages according to proof at trial.

## SIXTH CAUSE OF ACTION

**MISCLASSIFICATION OF EMPLOYEES; VIOLATION OF LABOR CODE**

**§226.8(a)(1)**

(As to All Defendants and DOES 1 to 100)

61.     Plaintiff re-alleges and incorporates by reference those allegations appearing in paragraphs 1 to 60 of this complaint as though fully set forth therein.

62.     It is unlawful for any person or employer to willfully misclassify an individual as an independent contractor. Cal. Lab. Code § 226.8(a)(1). " 'Willful misclassification' means avoiding employee status for an individual by voluntarily and knowingly misclassifying that individual as an independent contractor." Cal. Lab. Code § 226.8(i)(4).

63.     At all times during Plaintiff's employment and throughout the statutory period, Defendants employed Plaintiff as "independent contractor," even though the work performed and

**COMPLAINT**

conditions of employment were that of an "employee." The conditions and requirement of
employment with Defendants, include but are not limited to:

a)   Defendants direct and control the way Plaintiff performed his work, including
     controlling his schedule, and how he works.

b)   Defendants internally referred to Plaintiff as "employee."

c)   Defendants required that Plaintiff work overtime. Although Defendants never
     paid Plaintiff overtime wages.

d)   Defendants provided Plaintiff with dress which he was directed to wear while on
     duty pursuant to Defendants' dress code.

e)   Defendants paid Plaintiff on a weekly basis.

f)   Plaintiff reported to Defendants' office where they were assigned duties to
     different locations.

g)   Defendants can discipline and terminate Plaintiff.

h)   The services that Plaintiff performed are a regular part of Defendants' business.

i)   Plaintiff does not incur a profit or loss with providing security services and
     Defendants paid Plaintiff at an hourly rate.

j)   Defendants provided any other equipment that Plaintiff needed to perform their
     work.

64.   Defendants exercised that same dominion and control over Plaintiff and every
security guard that Defendants employed during Plaintiff's employment and throughout the
statutory period.

65.   If a person or employer has willfully misclassified an individual as an
independent contractor, the person or employer shall be subject to a civil penalty of not less than
five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each
violation, in addition to any other penalties or fines permitted by law. Cal. Lab. Code § 226.8(b).

66.   If the person or employer has engaged in or is engaging in a pattern or practice of
willfully misclassifying individuals as independent contractors, the person or employer shall be
subject to a civil penalty of not less than ten thousand dollars ($10,000) and not more than

15

twenty-five thousand dollars ($25,000) for each violation, in addition to any other penalties or

fines permitted by law. Cal. Lab. Code § 226.8(c).

67.    Defendants violated Labor Code Section 226.8 by willfully misclassifying many

of its employees, past and present, including Plaintiff, as independent contractors.

68.    Defendants have engaged in a pattern and practice of misclassifying their

employees as independent contractors to avoid the taxes, insurance, costs, and rights that

accompany employees.

### SEVENTH CAUSE OF ACTION

### FAILURE TO PROVIDE MEAL PERIODS

**(Violation of Labor Code §§ 512 and 226.7; IWC Wage Order No. 4-2001, §11)**

(As to All Defendants and DOES 1 to 100)

69.    Plaintiff re-alleges and incorporates by reference those allegations appearing in

paragraphs 1 to 68 of this complaint as though fully set forth therein.

70.    Labor Code § 226.7(a) provides, "No employer shall require any employee to

work during any meal or rest period mandated by an applicable order of the Industrial Welfare

Commission."

71.    IWC Order No. 4-2001(11)(A) provides, in relevant part: "No employer shall

employ any person for a work period of more than five (5) hours without a meal period of not

less than 30 minutes, except that when a work period of not more than six (6) hours will

complete the day's work the meal period may be waived by mutual consent of the employer and

the employee."

72.    Labor Code § 512(a) provides, in relevant part, that: "An employer may not

employ an employee for a work period of more than five hours per day without providing the

employee with a meal period of not less than 30 minutes, except that if the total work period per

day of the employee is no more than six hours, the meal period may be waived by mutual

consent of both the employer and employee. An employer may not employ an employee for a

work period of more than 10 hours per day without providing the employee with a second meal

period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours,

16

**COMPLAINT**

the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

73. As alleged herein, Defendants failed to authorize and permit uninterrupted meal breaks during Plaintiff's employment and throughout the statutory period. Plaintiff was routinely required to work without an uninterrupted meal break at the direction of Defendants and/or with Defendants' knowledge and acquiescence.

74. By its actions in requiring its employees to work through meal periods and/or its failure to relieve the seamstresses of their duties for their off-duty meal periods, Defendants have violated California Labor Code §226.7 and §11 of IWC Wage Order No. 4-2001, and is liable to Plaintiff.

75. As a result of the unlawful acts of Defendants, Plaintiff has been deprived of timely off-duty meal periods, and is entitled to recovery under Labor Code § 226.7(b) and §11 of IWC Wage Order No. 4-2001, in the amount of one additional hour of pay at the employee's regular rate of compensation for each work period during each day in which Defendants failed to Plaintiff with timely statutory off-duty meal periods.

## EIGHTH CAUSE OF ACTION

### FAILURE TO PROVIDE REST BREAKS

**(Violation of Labor Code §§ 512 and 226.7; IWC Wage Order No. 4-2001, §11)**

(As to All Defendants and DOES 1 to 100)

76. Plaintiff realleges and incorporates by reference those allegations appearing in paragraphs 1 to 75 of this complaint as though fully set forth therein.

77. Labor Code § 226.7(a) provides, "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

78. IWC Order No. 4-2001(12)(A) provides, in relevant part: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four hours or major fraction thereof.

However, a rest period need not be authorized for employees whose total daily work times is less than three and one-half hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."

79.     IWC Order No. 4-2001 (12)(B) further provides, "If an employer fails to provide an employee with a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

80.     As alleged herein, Defendant failed to authorize and permit rest breaks during Plaintiff's employment and throughout the statutory period. Plaintiff was routinely required to work through rest periods at the direction of Defendants and/or with Defendants' knowledge and acquiescence.

81.     By their actions in requiring Plaintiff to work through rest periods, Defendant violated §12 of IWC Wage Order No. 4-2001 and California Labor Code §226.7, and are liable to Plaintiff.

82.     As a direct and proximate result of Defendants' unlawful action, Plaintiff has been deprived of timely rest periods and/or were not paid for rest periods taking during Plaintiff's employment and throughout the statutory period, and are entitled to recovery under Labor Code §226.7(b) in the amount of one additional hour of pay at the employee's regular rate of compensation for each work period during each day in which Defendants failed to provide employees with timely and/or paid rest periods.

## NINTH CAUSE OF ACTION

### FAILURE TO PAY ALL OVERTIME AND DOUBLE TIME WAGES

### (Violation of Labor Code §§ 510 and 1194; IWC Wage Order No. 4-2001, §3)

(As to All Defendants and DOES 1 to 100)

83.     Plaintiff realleges and incorporates by reference those allegations appearing in paragraphs 1 to 82 of this complaint as though fully set forth therein.

84.     Section 510 of the Labor Code provides that, "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight

18

COMPLAINT

1  hours worked on the seventh day of work in any one workweek shall be compensated at the rate

2  of no less than one and one-half times the regular rate of pay for an employee. Any work in

3  excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular

4  rate of pay for an employee...."

5       85.    Section 3(a)(1) of Wage Order No. 4-2001 also mandates that employers pay one

6  and one-half times the employees' regular rate of pay for employees who work more than eight

7  (8) hours in a day or forty (40) hours in a week, and two times their regular rate of pay for any

8  work in excess of twelve (12) hours in one day.

9       86.    At all times relevant hereto, Plaintiff was non-exempt for purposes of the

10  overtime and double pay requirements set forth in the Labor Code and Wage Order No. 4-2001.

11  In addition, Plaintiff consistently worked twelve (12) hours or more each day from 2:00 pm to

12  2:00 am.

13       87.    As a direct and proximate result of Defendants' violation of Labor Code §§

14  510 and 1194, Plaintiff seeks damages and all unpaid overtime and double-time compensation in

15  an amount to be determined at trial.

16  <center>**TENTH CAUSE OF ACTION**</center>

17  <center>**FAILURE TO PAY ALL WAGES OWED EVERY PAY PERIOD**</center>

18  <center>**(Violation of Labor Code §204)**</center>

19  <center>(As to All Defendants and DOES 1 to 100)</center>

20       88.    Plaintiff re-alleges and incorporates by reference those allegations appearing in

21  paragraphs 1 to 87 of this complaint as though fully set forth therein.

22       89.    Labor Code §204 establishes the fundamental right of all employees in the State

23  of California to be paid wages in a timely fashion for their work.

24       90.    At all times relevant during Plaintiff's employment and throughout the statutory

25  period, Defendants failed to pay Plaintiff the full amount of all owed wages when due as

26  required by Labor Code §204.

27       91.    Defendant failed to pay Plaintiff all wages earned each pay period. Plaintiff is

28  informed, believes, and thereon alleges, that at all times relevant during Plaintiff's employment

<center>19</center>
<center>**COMPLAINT**</center>

and throughout the statutory period, Defendants maintained a policy or practice of not paying

Plaintiff: (i) minimum wages for all hours worked; (ii) overtime wages for all overtime hours

worked; and (iii) premium wages for all missed meal and rest periods.

92.    As a result of Defendants' unlawful conduct, Plaintiff has suffered damages in an

amount, subject to proof, to the extent that Plaintiff was not paid all wages each pay period. The

precise amount of unpaid wages is not presently known to Plaintiff but can be determined

directly from Defendant's records or indirectly based on information from Defendants' records.

## ELEVENTH CAUSE OF ACTION

### FAILURE TO PAY ALL WAGES DUE UPON SEPARATION

#### (Violation of Labor Code §203)

(As to All Defendants and DOES 1 to 100)

93.    Plaintiff re-alleges and incorporates by reference those allegations appearing in

paragraphs 1 to 92 of this complaint as though fully set forth therein.

94.    Labor Code §§ 201 and 202 requires Defendant to pay all compensation due and

owing to former seamstresses at or around the time employment is terminated. Section 203 of the

California Labor Code provides that if an employer willfully fails to pay compensation promptly

upon discharge or resignation, as required by §§ 201 and 202, then the employer is liable for

penalties in the form of continued compensation up to thirty (30) work days.

95.    At all times relevant during Plaintiff's employment and throughout the statutory

period, Plaintiff was an employee of Defendant covered by Labor Code § 203.

96.    Plaintiff was not paid for her work performed in excess of eight (8) hours per day,

nor was he paid for all hours worked.

97.    Defendant willfully failed to pay Plaintiff who is no longer employed by

Defendant for her uncompensated hours, uncompensated overtime, and missed, untimely or on-

duty meal and rest periods upon her termination or separation from employment with Defendant

as required by California Labor Code §§ 201 and 202.  As a result, Defendant is liable to

Plaintiff for waiting time penalties amounting to thirty days wages for Plaintiff pursuant

to California Labor Code § 203.

**COMPLAINT**

///

## TWELFTH CAUSE OF ACTION

### FAILURE TO FURNISH TIMELY AND ACCURATE WAGE STATEMENT

#### (Violation of Labor Code § 226 and 226.3)

(As to All Defendants and DOES 1 to 100)

98.     Plaintiff re-alleges and incorporates by reference those allegations appearing in paragraphs 1 to 97 of this complaint as though fully set forth therein.

99.     Labor Code §226(a) provides: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee..., (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

100.     Labor Code §226(e) provides that an employee is entitled to recover $50 for the initial pay period in which a violation of §226 occurs and $100 for each subsequent pay period, as well as an award of costs and reasonable attorneys' fees, for all pay periods in which the employer knowingly and intentionally failed to provide accurate itemized statements to the employee causing the employee to suffer injury.

101.     Plaintiff is informed, believes, and thereon alleges that at all times relevant, Defendants knowingly and intentionally failed to furnish Plaintiff with timely and accurate

COMPLAINT

itemized wage statement showing the gross wages earned by Plaintiff, as required by Labor Code

§226 (a), in that the payments owed to Plaintiff for unpaid minimum wages, unpaid overtime,

and missed meal and rest periods, were not included in gross wages earned by Plaintiff.

102.    Defendants' failure to provide Plaintiff with accurate itemized wage statements

during Plaintiff's employment and throughout the statutory period has caused Plaintiff to incur

economic damages in that Plaintiff was not aware that he was owed and not paid compensation

for missed rest periods and on-duty meal periods, for hours worked without pay, and for

overtime worked without pay. In addition, Defendants provided inaccurate information regarding

hours worked, which masked their underpayment of wages to Plaintiff.

## THIRTEENTH CAUSE OF ACTION

### FAILURE TO MAINTAIN EMPLOYMENT RECORDS

### (Violation of Labor Code §§226 and 226.3)

(As to All Defendants and DOES 1 to 100)

103.    Plaintiff re-alleges and incorporates by reference those allegations appearing in

paragraphs 1 to 102 of this complaint as though fully set forth therein.

104.    Labor Code §226(b) requires an employer to keep, and permit an employee to

inspect, all of the information set forth in Labor Code §226(a).

105.    IWC Wage Order No. 4-2001 requires an employer to keep, and permit an

employee to inspect, all of the information set forth in §7(A) of Order No. 4-2001.

106.    Labor Code §1174 states: "Every person employing labor in this state shall:... (d)

Keep, at a central location in the state or at the plants or establishments at which employees

are employed, payroll records showing the hours worked daily by and the wages paid to, and the

number of piece-rate units earned by and any applicable piece rate paid to,

employees employed at the respective plants or establishments. These records shall be kept in

accordance with rules established for this purpose by the commission, but in any case shall be

kept on file for not less than two years."

107.    Defendants willfully failed to maintain records in accordance with Labor Code

§226(b), Labor Code § 1174 (d) and Order No. 4-2001.

COMPLAINT

///

108.     Defendants' failure to keep and maintain Plaintiff's employment records during Plaintiff's employment and throughout the statutory period has caused Plaintiff to incur economic damages in that Plaintiff was not aware that he was owed and not paid compensation for missed rest periods and on-duty meal periods, for hours worked without pay, and for overtime worked without pay.

**FOURTEENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION ACT**

**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §§17200 *et seq*.)**

(As to All Defendants and DOES 1 to 100)

109.     Plaintiff re-alleges and incorporates by reference those allegations appearing in paragraphs 1 to 108 of this complaint as though fully set forth therein.

110.     Section 17200 of the California Business and Professions Code (the "UCL") prohibits any unlawful, unfair, or fraudulent business practices.

111.     Through its action alleged herein, Defendants have engaged in unfair competition within the meaning of the UCL.  Defendants' conduct, as alleged herein, constitutes unlawful, unfair, and/or fraudulent business practices under the UCL.

112.     Defendants' unlawful conduct under the UCL includes, but is not limited to, violating the statutes alleged herein.  Defendants' unfair conduct under the UCL includes, but is not limited to, the willful misclassification of Plaintiff as independent contractors, failure to pay Plaintiff overtime wages, failure to provide Plaintiff meal periods, failure to provide Plaintiff rest breaks, failure to pay Plaintiff all wages owed every pay period, failure to furnish to Plaintiff timely and accurate wage statements, and failure to maintain employment records.

113.     As a direct and proximate result of the unfair business practices described above, Plaintiff has suffered significant losses, and Defendants have been unjustly enriched.

114.     As a direct and proximate result of these unfair business practices, Defendants have been unjustly enriched and have received and continue to hold funds that rightfully belong to Plaintiff.

23

**COMPLAINT**

///

115.    Pursuant to Business and Professions Code §17203, Plaintiff is entitled to restitution of money acquired by Defendants by means of their unfair business practices, in amounts not yet ascertained but to be ascertained at trial.

116.    Plaintiff is entitled, under Business and Professions Code §17203, to equitable restitutionary disgorgement from Defendants restoring and/or returning to Plaintiff all of Defendants' unfair or illegally gotten profits and any other element of equitable relief for a full restitutionary remedy.

## FIFTEENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(As to All Defendants and DOES 1 to 100)

117.    Plaintiff re-alleges and incorporates by reference those allegations appearing in paragraphs 1 to 116 of this complaint as though fully set forth therein.

118.    Defendants, and each of them, engaged in a conduct that was extreme and outrageous. Defendant MURADYAN, and DOES 1-20 intentionally grabbing Plaintiff by the arms, punching him on his face, throwing him to the ground, choke hold on his neck, tazing him and hand cuffing him for more than 30 minutes before the Police arrived. Defendants' conduct was extreme and outrageous from a reasonable person standard.

119.    The conduct of Defendants, and each of them, was intentional, extreme, outrageous and malicious and was done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and extreme emotional distress, or was, at the very least, done with reckless disregard for the high probability that Plaintiff would suffer severe emotional distress.

120.    As direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff suffered embarrassment, humiliation, shame, a loss of dignity, and severe emotional distress arising therefrom. Defendants, and each of them, knew or should have known that such treatment would cause Plaintiff to suffer embarrassment, humiliation, shame, a loss of dignity, and severe emotional distress, all to Plaintiff's damage.

**COMPLAINT**

121.    As a further direct and proximate result of Defendants', and each of them, intentional infliction of emotional distress, Plaintiff was hurt and injured in his health, strength, and activity, sustaining injury to his nervous system and person, all of which injuries have caused and continue to cause Plaintiff great mental, physical, and nervous pain and suffering.

122.    Plaintiff was required to and did employ physicians to examine, treat, and care for him, and incurred additional medical expenses for medical treatment.  Plaintiff is informed and believes and thereon alleges that he will incur some additional medical expenses the exact amount of which is unknown at this time.

123.    The acts of Defendants, and each of them, as alleged above, were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

## SIXTEENTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(As to All Defendants and DOES 1 to 100)

124.    Plaintiff re-alleges and incorporates by reference those allegations appearing in paragraphs 1 to 123 of this complaint as though fully set forth therein.

125.    Defendants, and each of them, had a responsibility and duty for the care, so as to not engage in conduct that was extreme and outrageous. Defendants conduct was extreme and outrageous from any reasonable person standard. Defendants, and each of them, had a duty of care to adhere to a standard of care so as to not cause emotional distress to Plaintiff.  Defendants, and each of them, further understood that their duty extended to all foreseeable persons, like Plaintiff, who were susceptible to emotional distress from any conduct that in all likelihood will and actually did cause emotional distress to Plaintiff.

126.    As direct and proximate result of Defendants' negligent infliction of emotional distress, Plaintiff suffered embarrassment, humiliation, shame, a loss of dignity, and severe emotional distress arising therefrom.

127.    As a further direct and proximate result of Defendants' negligent infliction of emotional distress, Plaintiff was hurt and injured in his health, strength, dignity and activity, sustaining injury to his nervous system and person, all of which injuries have caused and

**COMPLAINT**

1  continue to cause Plaintiff great humiliation and mental, physical, and nervous pain and

2  suffering.

3         128.    Plaintiff was required to and did employ physicians to examine, treat, and care for

4  him, and incurred additional medical expenses for medical treatment. Plaintiff is informed and

5  believes and thereon alleges that he will incur some additional medical expenses the exact

6  amount of which is unknown at this time.

7  <div align="center">**JURY DEMAND**</div>

8      Plaintiff demands trial by Jury.

9  <div align="center">**PRAYER**</div>

10  WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below:

11      1.  For compensatory and general damages in an amount according to proof;

12      2.  For all unpaid minimum wages and liquidated damages due to Plaintiff;

13      3.  For all unpaid overtime wages due to Plaintiff;

14      4.  For one hour of wages due to Plaintiff for each work period of more than

15          four (4) hours that Plaintiff did not receive an uninterrupted ten (10)

16          minute rest period;

17      5.  For one hour of wages due to Plaintiff for each work period of more than

18          five (5) hours when Plaintiff did not receive an uninterrupted thirty (30)

19          minute meal period;

20      6.  For continuation wages under Labor Code § 203;

21      7.  For civil penalties pursuant to Labor Code § 2699;

22      8.  For civil penalties pursuant to Labor Code § 226.8;

23      9.  For civil penalties pursuant to Labor Code § 226.3;

24      10. For all applicable civil penalties as set forth in the Labor Code;

25      11. For all applicable statutory penalties set forth in the Labor Code;

26      12. For liquidated damages as set forth in the Labor Code;

27      13. For restitutionary disgorgement pursuant to Business and Professions

28          Code §§ 17200 *et seq.*;

<div align="center">**COMPLAINT**</div>

14. For an order enjoining Defendants from further unfair and unlawful
    business practices in violation of Business and Professions Code §§ 17200
    *et seq.*;

15. For punitive damages;

16. For statutory attorneys' fees and costs;

17. For prejudgment and post-judgment interest according to any applicable
    provision of law, according to proof;

18. For costs of suit;

19. For reasonable attorney's fees; and

20. For such other further relief as the Court deems proper and just.

Dated: June 3, 2019                          **McMURRAY HENRIKS, LLP**

By: _____
    Yana Henriks, Esq.
    Rene M. Maldonado, Esq.
    *Attorneys for Plaintiff* SEAN BROCKETT

**COMPLAINT**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

 17609 Ventura Blvd., Suite 314, Encino, CA 91316.

A true and correct copy of the foregoing document entitled (*specify*):  NOTICE OF OBJECTION AND DEBTOR'S
 OBJECTION TO PROOF OF CLAIM NO. 6 FILED BY DEVONNAIR R. JOHNSON
 MEMORANDUM OF POINTS AND AUTHORITIES;
 DECLARATION OF EDMON MURADYAN IN SUPPORT THEREOF
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 06/09/2023          , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)    06/09/2023          , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (**state method
for each person or entity served**)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)                     , I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/09/2023 | Max Bonilla | /s/  Max Bonilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) [CONTINUED]**:

- <u>Subchapter V Trustee</u>: Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
- <u>Counsel for Debtor</u>: Roksana D. Moradi-Brovia    roksana@rhmfirm.com, matt@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- <u>Counsel for US Trustee</u>: Kelly L Morrison    kelly.l.morrison@usdoj.gov
- <u>Counsel for Debtor</u>: Matthew D. Resnik    matt@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- <u>United States Trustee (LA)</u>    ustpregion16.la.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL [CONTINUED]**:

Hon. Vincent P. Zurzolo
U.S. Bankruptcy Court
Central District – L.A. Division
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012

Special Unit Security Inc.
1457 W. El Segundo Blvd.
Compton, CA 90222

Devvonnair  R. Johnson
c/o Justice Turner & Yana Henriks
McMurray Henriks, LLP
811 Wilshire Boulevard, Suite 1640
Los Angeles, CA 90017

Devvonnair R. Johnson
c/o Rene M. Maldonado, Esq.
1801 Century Park E, Ste 840
Los Angeles, CA 90067-2349