1  Roksana D. Moradi-Brovia (Bar No. 266572)
   W. Sloan Youkstetter (Bar No. 296681)
2  **RHM LAW LLP**
   17609 Ventura Blvd., Suite 314
3  Encino, CA 91316
   **Telephone:** (818) 285-0100
4  **Facsimile:** (818) 855-7013
   roksana@RHMFirm.com
5  sloan@RHMFirm.com

6  *Attorneys for Debtor*
   Special Unit Security Inc.

7

8              **UNITED STATES BANKRUPTCY COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

10 In re                              )  Case No. 2:22-bk-15668-VZ
                                      )
11                                    )  Chapter 11
                                      )
12 SPECIAL UNIT SECURITY INC.,        )
                                      )
13              Debtor.               )  **OMNIBUS REPLY IN SUPPORT OF**
                                      )  **FIRST AMENDED CHAPTER 11**
14                                    )  **PLAN OF REORGANIZATION;**
                                      )  **DECLARATION OF EDMON**
15                                    )  **MURADYAN IN SUPPORT**
                                      )  **THEREOF**
16                                    )
                                      )  Date:   August 28, 2025
17                                    )  Time:   11:00 p.m.
                                      )  Place:  Courtroom 1368
18                                    )          255 E. Temple Street
                                      )          Los Angeles, CA 90012
19                                    )

20      **TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES**

21 **BANKRUPTCY JUDGE; UNSECURED CREDITOR, DEVONNAIR JOHNSON;**

22 **SUBCHAPTER V TRUSTEE; AND ALL PARTIES IN INTEREST:**

23      Special Unit Security Inc., the "Debtor" and "Debtor-in-Possession" in the above-

24 stated case, hereby replies to the *Opposition* [Docket No. 322] filed by Devonnair Johnson

25 ("Johnson") and the *Statement* [Docket No. 324] filed by the subchapter V Trustee, Greg

26 Jones (the "Trustee") to the Debtor's *Motion to Confirm 1st Amended Subchapter V Plan of*

27 *Reorganization* [Docket No. 321] ("Motion to Confirm"), as follows.

28 *///*

**RHM LAW LLP**

## I.  Trustee's Concerns

The Trustee requests additional evidence as to feasibility; specifically, Debtor's principal Edmon Muradyan's ability to make contributions as proposed in the Plan.  Mr. Muradyan has pledged to make gift contributions to assist the Debtor with making the administrative Plan payments in the first four months following the Effective date (14 days after the entry of the order confirming the Plan), and the balloon payments in month 26. Mr. Muradyan also pledged to contribute, when necessary, during the Plan term.

The Debtor notes that Mr. Muradyan has been personally paying counsel's approved attorney fees postpetition of approximately $38,000.  He has also personally paid the Trustee's approved fees as well.

Mr. Muradyan has also paid in full the monetary portion of the Consent Judgment and Permanent Injunction entered into with the United States Department of Labor ("US DOL").  He paid the judgment amount of $340,000 on or about January 30, 2025. Attached as **Exhibit "A"** and incorporated herein is the screenshot of Mr. Muradyan's payment to the US DOL.

Notwithstanding, Mr. Muradyan has sufficient funds to contribute to the Plan. Attached as **Exhibit "B"** and incorporated herein are Mr. Muradyan's redacted June and July Chase statements.  The statements show that Mr. Muradyan has enough cash flow and funds in the account to contribute.

As such, Mr. Muradyan has a documented record of contributions to the Debtor during this case.

The Trustee also wanted clarification as to Mr. Muradyan's postconfirmation monthly compensation.  Although the Plan stated that his compensation would be "TBD," his wages were omitted from the Projected Income and Expenses for Five Years, attached to the Plan as Exhibit "D" (the "Projections"), and Mr. Muradyan had no intention of receiving any wages postconfirmation during the five year Plan term – it would be illogical for him to contribute to Plan payments while simultaneously taking a paycheck that would require *further* contributions.

## II.    Johnson's Objection

Johnson asserts that the Plan is not feasible as the Debtor will not be able to obtain new accounts due to previous allegations of wage and labor violations. *See* Objection, pgs. 3-4, ¶II.A.  However, he submits absolutely no admissible evidence in support.  He relies on a declaration that was filed in 2023. *See Declaration of Francisco Ocampo in Support of Secretary of Labor's Opposition to Special Security Inc.'s Objection to Proof of Claim*, Docket No. 106-1.  Johnson does not even submit any evidence that the Debtor lost business due to these allegations of wage and labor violations.

Johnson conveniently omits that the Debtor has resolved all issues with the US DOL and there were strict compliance terms set forth in the judgment. *See* Motion to Approve Consent Judgment and Permanent Injunction, Docket No. 288, Exhibit "A," pgs. 15-22, ¶¶1-19.  More importantly, there have been no further allegations as to additional wage and labor violations, and the US DOL has not filed anything stating that the Debtor has defaulted on any term in the judgment.  As stated previously, Mr. Muradyan has already satisfied the monetary portion of the judgment.

The Debtor has been upfront about and has fully disclosed its financial struggles postpetition.  However, the Debtor's financial performance in 2025 is generally aligned with the Projections, as shown in the Monthly Operating Reports ("MORs"). *See* Motion to Confirm, pg. 8, ¶III.A; Plan, Exhibit "D," pg. 15.  As such, there is nothing to support that the Debtor cannot maintain or improve upon its current monthly revenue.

Johnson asserts that the Plan fails the best interest of creditors test as he believes that the Debtor's client accounts have more value than disclosed in the liquidation analysis. *See* Objection, pg. 5, ¶II.C.

The Debtor has eight current client accounts, which stem from contracts that the parties entered into years prior.  The contracts generally have fixed terms, but the payment terms are adjusted periodically for inflation, rather than entering into new contracts.  These accounts have little value because (1) a potential buyer (a competing security company) would be bound to the terms of the original contract, (2) the cost to service the accounts is

RHM LAW LLP

expensive (labor, uniforms, etc.).  Any party purchasing these accounts must abide by the original contract terms and inherent the cost to service them, whether utilizing third party contractors or its own labor.  A buyer faces the risk that once it purchases the contract and the Debtor transfers the contract to the buyer; the client could immediately give notice to terminate the contract.

For these reasons, the accounts are much less valuable than whatever the potential gross revenue may be.  A hypothetical buyer is going to take into consideration all these risks and will want a return on their investment immediately because there is no guarantee that they will hold the contracts for more than a month.  A hypothetical buyer is not going to calculate the gross revenue over an extended period of time when they make an offer.  They will look to use that first month as the starting point and will subtract the estimated cost of goods sold in order to make an offer.  It would make more sense for a competing company to just negotiate with the client to enter in a new contract than trying to purchase it from the Debtor in the first place as that would be a much cheaper alternative.

However, Johnson appears to misunderstand how a Chapter 7 liquidation works.  Even if there was any value to the accounts, i.e., transferrable, in order for a Chapter 7 trustee to disburse any funds to the unsecured claims, the net proceeds from any liquidation must exceed the fees and associated with 11 U.S.C. §507, as those claims are paid first.  *See* 11 U.S.C. §726(a)(1).  These fees would include the hypothetical Chapter 7 trustee fees under §326 and their administrative fees.

The Debtor has estimated Chapter 11 administrative fees of about $96,283 (bankruptcy counsel and subchapter V Trustee fees) and priority taxes/wages of about $106,726, which totals about $203,009.  The Debtor projected low Chapter 7 trustee fees and administrative fees based on the little value of the Debtor's assets.  However, the Debtor did list that "Goodwill" was valued at $120,000 in Schedule A/B [Docket No. 19) (this value encompasses the larger client accounts the Debtor lost postpetition).  Assuming that a Chapter 7 trustee could sell the accounts for $120,000, along with the funds in the DIP account ($8,971), and the furniture ($950), that would only leave about $23,195 once

1  the priority tax claims ($106,726) are paid in full to pay the outstanding Chapter 7

2  administrative fees (plus the statutory trustee fees), the Chapter 11 administrative fees, and

3  then, whatever is remaining is disbursed pro rata to the general unsecured claims.  As such,

4  the unsecured creditors would still be unlikely to receive any distribution in a Chapter 7

5  liquidation even if a trustee could recover the maximum value for the estate.

6       However, the Plan proposes to pay Class #2b $40,200 over five years.  This is

7  objectively more than what the unsecured creditors would receive in a hypothetical

8  Chapter 7 liquidation if the Debtor's assets were sold at maximum value.  Therefore, the

9  Debtor has satisfied 11 U.S.C. §1129(a)(7).

10       Johnson objects to the continuance of the Debtor's current management.  *See*

11  Objection, pgs. 6-7, ¶II.D.  However, the Trustee addresses this and the Debtor agrees with

12  his analysis.  Further, as previously stated, the Debtor has strict compliance obligations

13  pursuant the judgment with the US DOL.  As such, this should alleviate any and all

14  concerns about any future allegations of wage and labor violations.

15       More importantly, the only person who is willing to manage the Debtor is Mr.

16  Muradyan.  If he is removed, the business will fail, and creditors will receive nothing as

17  the Debtor's assets have minimal value.

18       Johnson asserts that the default provisions proposed in the Debtor's Motion to

19  Confirm[1] are insufficient.  *See* Objection, pg. 8, ¶II.E.  However, the Debtor proposed

20  default provisions that are commonly used in the Central District.  In contrast, Johnson

21  requests a default provision that is essentially a unilateral modification of the Plan upon

22  default.  Any modification of a plan must be brought in compliance with 11 U.S.C. §1193.

23       In any event, the Debtor instead proposes the following default terms found within

24  the Court's Local Bankruptcy Rules Form plan of reorganization  F 3018-1.CH11.PLAN

25  (that will supersede and replace the proposed default provisions set forth in the Motion to

26  Confirm), as follows:

27

28

RHM LAW LLP

---

[1] The proposed remedies pursuant to 11 U.S.C. §1191(c)((3)(B)(ii).

**D. Actions Restrained.** Creditors, interest holders and other parties in interest may not take any action to enforce preconfirmation obligations, or any obligations due under this Plan, so long as Debtor is not in material default under this Plan (as defined below). If Debtor is in material default under this Plan, then any party in interest may: (1) take any action permitted under nonbankruptcy law either (a) to enforce the terms of this Plan as a contract of Debtor or (b) to pursue nonbankruptcy remedies including collection of the entire nondischarged dollar amount of any claim held by such person, or (2) if this case is still pending, move to dismiss this case or to convert this case to one under chapter 7, or seek other relief from the bankruptcy court. If this case is converted to chapter 7 at any time, then property will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the court during this case.

**E. Material Default Defined.** If Debtor (1) fails to make any payment required under this Plan, or (2) fails to perform any other obligation required under this Plan for more than 14 days after the time specified in this Plan, or (3) performs any act that is inconsistent with the terms of this Plan, then any affected creditor, interest holder, or other party in interest may file and serve upon Debtor and Debtor's attorney (if any) a written notice of default at their most recent address(es) listed in this case. Debtor is in material default under this Plan if Debtor fails within 21 days after service of that notice of default, plus an additional 3 days if served by mail, either to cure the default or obtain from the court an extension of time to cure the default or a determination that no material default occurred. Notwithstanding the other provisions of this paragraph, to the extent that Debtor has assumed an executory contract or unexpired lease, or to the extent that a creditor retains a lien under this Plan that was a consensual lien, the default provisions of that contract, lease, or lien documentation govern what constitutes a default for purposes of the rights and remedies thereunder, all subject to applicable nonbankruptcy law and any exceptions set forth in this Plan.

Therefore, the Debtor believes that the Plan provides for appropriate remedies pursuant to 11 U.S.C. §1191(c)(3)(B)(ii)

Johnson also asserts that the Plan does not state which claims are unimpaired. *See* Objection, pg. 8, ¶II.E. However, the Debtor used the Court's form Plan, which contains check boxes stating whether claims are not being modified. It is clear that the Plan contains no unimpaired classes.

///

///

///

///

///

RHM LAW LLP

6

WHEREFORE, the Debtor respectfully requests that the Court overrule the Opposition and confirm the Plan.

Dated:  August 21, 2025

**RHM LAW LLP**

By: /s/ Roksana D. Moradi-Brovia
**Roksana D. Moradi-Brovia**
**W. Sloan Youkstetter**
*Attorneys for Debtor*
Special Unit Security Inc.

**RHM LAW LLP**

## **DECLARATION OF EDMON MURADYAN**

I, Edmon Muradyan, declare as follows:

1.      I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto.  Where facts are alleged upon information and belief, I believe them to be true.

2.      I am the Chief Executive Officer, and 100% shareholder, and a custodian of records of Special Unit Security Inc., the "Debtor" and "Debtor-in-Possession" in the above-captioned case.  I am authorized to make decisions for the Debtor.

3.      I am a custodian of the Debtor's books, records, and documents.  The Debtor maintains records of its transactions in the regular course of business, and it is the Debtor's practice and procedure to maintain records and to record transactions, acts, and events at or about the time the transaction occurs.  The Debtor relies on these records in connection with its business dealings.

4.      I have a documented record of contributions to the Debtor during this case.  I have been personally paying the Debtor's counsel's approved attorney fees postpetition of approximately $38,000.  I have also personally paid the Trustee's approved fees as well.

5.      I have also paid in full the monetary portion of the Consent Judgment and Permanent Injunction entered into with the United States Department of Labor ("US DOL").  I paid the judgment amount of $340,000 on or about January 30, 2025.  Attached as **Exhibit "A"** is a true and correct copy of the screenshot of my payment to the US DOL.

6.      Further, I have pledged to make gift contributions to assist the Debtor with making the administrative Plan payments in the first four months of the Plan term, and the balloon payments in month 26.  I have also pledged to make gift contributions when necessary, during the Plan term to assist with funding business operations or Plan payments, as needed.

7.      My contribution is purely discretionary and voluntary and is made to fill in the gaps where the Debtor's income is not sufficient to fund Plan payments and typical

RHM LAW LLP

8

business expenses.  My willingness to make these contributions is in no way to be construed as my personal guarantee or otherwise legally binding.  In the unlikely event that the Debtor's Plan fails and this case is dismissed or converted for any reason, a trustee or court cannot require me to make any (additional) contribution payments.

8.    I have sufficient funds to contribute to the Plan.  Attached as **Exhibit "B"** are true and correct copies of my redacted June and July Chase statements.  The statements show that I have enough cash flow and funds in the account to contribute.

9.    My wages were omitted from the projected income and expenses attached to the Plan as Exhibit "D" (the "Projections") because the Debtor does not have sufficient income to fund my compensation while simultaneously funding Plan payments and typical business expenses.

10.    I believe that I am the only person who is willing to manage and operate the Debtor.  If I am removed, the business will fail, and creditors will receive nothing as the Debtor's assets have minimal value.

11.    The Debtor has resolved all issues with the United States Department of Labor ("US DOL") and there were strict compliance terms set forth in the judgment.  *See* Motion to Approve Consent Judgment and Permanent Injunction, Docket No. 288, Exhibit "A," pgs. 15-22, ¶¶1-19.  More importantly, there have been no further allegations as to additional wage and labor violations, and the US DOL has not filed anything stating that the Debtor has defaulted on any term in the judgment.

12.    The Debtor has eight current client accounts, which stem from contracts that the parties entered into years prior.

13.    The contracts generally have fixed terms, but the payment terms are adjusted periodically for inflation, rather than entering into new contracts.  These accounts have little value because (1) a potential buyer (a competing security company) would be bound to the terms of the original contract, (2) the cost to service the accounts is expensive (labor, uniforms, etc.).  Any party purchasing these accounts must abide by the original contract terms and inherent the cost to service them, whether utilizing third party contractors or its

RHM LAW LLP

own labor.  A buyer faces the risk that once it purchases the contract and the Debtor transfers the contract to the buyer; the client could immediately give notice to terminate the contract.

14.    For these reasons, the accounts are much less valuable than whatever the potential gross revenue may be.  A hypothetical buyer is going to take into consideration all these risks and will want a return on their investment immediately because there is no guarantee that they will hold the contracts for more than a month.  A hypothetical buyer is not going to calculate the gross revenue over an extended period of time when they make an offer.  They will look to use that first month as the starting point and will subtract the estimated cost of goods sold in order to make an offer.  It would make more sense for a competing company to just negotiate with the client to enter in a new contract than trying to purchase it from the Debtor in the first place as that would be a much cheaper alternative.

15.    The Debtor has been upfront about and has fully disclosed its financial struggles postpetition.  However, the Debtor's financial performance in 2025 is generally aligned with the Projected Income and Expenses for Five Years (the Projections") as shown in the Monthly Operating Reports ("MORs").  *See* Motion to Confirm, pg. 8, ¶III.A; Plan, Exhibit "D," pg. 15.  As such, there is nothing to support that the Debtor cannot maintain or improve upon its current monthly revenue.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed August 21, 2025, at ___Simi Valley_____, California.

By: _____
Edmon Muradyan
*Declarant*

RHM LAW LLP

10

# EXHIBIT "A"


← **Transaction Details**



## ORIG CO NAME:WHD BW PENALTY ORI...

# -$340,000.00

### Transaction details

| | |
|---|---|
| Type | ACH debit |
| Transaction date | Jan 30, 2025 |
| Posted date | Jan 30, 2025 |

Description

NAME:EDMON  MURADYAN

| | |
|---|---|
| Category | Bills & Utilities |

Disclaimer: Transaction details may be preliminary or
~~incomplete and may not match the transaction as it appears~~

 

# EXHIBIT "B"



**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

May 31, 2025 through June 30, 2025

Account Number:



### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |
| We accept operator relay calls | |

00087435 DRE 703 143 18225 NNNNNNNNNNN T 1 000000000 64 0000
EDMON MURADYAN
1457 W EL SEGUNDO BLVD
COMPTON CA 90222-1144

## CHECKING SUMMARY    Chase Business Complete Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$56,563.47** |
| Deposits and Additions | 7 | 28,570.63 |
| Checks Paid | 16 | -31,516.74 |
| ATM & Debit Card Withdrawals | 17 | -2,750.74 |
| Electronic Withdrawals | 32 | -15,587.09 |
| **Ending Balance** | **72** | **$35,279.53** |

Congratulations, we waived the $15 Monthly Service Fee for this statement period, based on your qualifying activity.

**How to Avoid the Monthly Service Fee (MSF)**
If you meet any of the following qualifying activities for this Chase Business Complete Checking^SM account in a statement period, we will waive the $15 MSF.

Here's the business activity we used to determine if you qualified for the MSF waiver:
- $2,000 Minimum Daily Ending Balance: Your lowest daily ending balance was $25,916.54.
- $2,000 Chase Payment Solutions^SM Activity: -$9.95 was deposited into this account.
- $2,000 Chase Ink^® Business Card Activity: $0.00 was your total Ink activity.

You can also avoid the MSF if you:
- Maintain a linked Chase Private Client Checking^SM account OR
- Meet Chase Military Banking requirements

For complete details on all requirements to avoid the MSF, please review the Additional Banking Services and Fees for Business Accounts at chase.com/business/disclosures or visit a Chase branch.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/06 | | $8,100.00 |
| 06/06 | | 120.00 |
| 06/13 | | 8,100.00 |
| 06/13 | | 2,076.40 |

![CHASE]

May 31, 2025 through June 30, 2025

Account Number: ▉▉▉▉▉▉▉▉▉▉

## DEPOSITS AND ADDITIONS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/24 | ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ | 43.00 |
| 06/27 | ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ | 2,031.23 |
| 06/30 | ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ | 8,100.00 |
| **Total Deposits and Additions** | | **$28,570.63** |



## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| | | | |

**Total Checks Paid**

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

\* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|





May 31, 2025 through June 30, 2025

Account Number: ████████████

## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|

## ATM & DEBIT CARD SUMMARY

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|





May 31, 2025 through June 30, 2025

Account Number: ███████████

## ELECTRONIC WITHDRAWALS *(continued)*



| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|

**Total Electronic Withdrawals**

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 06/02 | $52,034.96 | 06/10 | 31,181.07 | 06/20 | 33,988.92 |
| 06/03 | 51,184.01 | 06/11 | 30,430.78 | 06/23 | 32,793.88 |
| 06/04 | 51,098.52 | 06/12 | 30,353.78 | 06/24 | 31,358.31 |
| 06/05 | 50,358.52 | 06/13 | 40,384.02 | 06/25 | 25,916.54 |
| 06/06 | 54,364.52 | 06/16 | 37,779.21 | 06/27 | 27,357.77 |
| 06/09 | 34,222.82 | 06/17 | 37,279.21 | 06/30 | 35,279.53 |



May 31, 2025 through June 30, 2025

Account Number: ▮▮▮▮▮▮▮▮▮▮



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will provide provisional credit to your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts,** our practice is to follow the procedures described above as detailed in your Deposit Account Agreement or other applicable agreements, but we are not legally required to do so. For example, we require you to notify us no later than 30 days after we sent you the first statement on which the error appeared. We may require you to provide us with a written statement that the disputed transaction was unauthorized. We are also not required to give provisional credit.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS**: Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your Deposit Account Agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**

**CHASE** ⬡

May 31, 2025 through June 30, 2025

Account Number: ███████████

This Page Intentionally Left Blank

# CHASE ◻

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

July 01, 2025 through July 31, 2025

Account Number: ███████████



## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

We accept operator relay calls

00049619 DRE 703 143 21325 NNNNNNNNNNN T 1 000000000 64 0000
EDMON MURADYAN
1457 W EL SEGUNDO BLVD
COMPTON CA 90222-1144

---

## CHECKING SUMMARY    Chase Business Complete Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$35,279.53** |
| Deposits and Additions | 6 | 13,158.93 |
| Checks Paid | 16 | -17,182.16 |
| ATM & Debit Card Withdrawals | 5 | -963.56 |
| Electronic Withdrawals | 25 | -11,234.91 |
| **Ending Balance** | **52** | **$19,057.83** |

Congratulations, we waived the $15 Monthly Service Fee for this statement period, based on your qualifying activity.

**How to Avoid the Monthly Service Fee (MSF)**
If you meet any of the following qualifying activities for this Chase Business Complete Checking<sup>SM</sup> account in a statement period, we will waive the $15 MSF.

Here's the business activity we used to determine if you qualified for the MSF waiver:
* $2,000 Minimum Daily Ending Balance: Your lowest daily ending balance was $16,844.84.
* $2,000 Chase Payment Solutions<sup>SM</sup> Activity: -$9.95 was deposited into this account.
* $2,000 Chase Ink<sup>®</sup> Business Card Activity: $0.00 was your total Ink activity.

You can also avoid the MSF if you:
* Maintain a linked Chase Private Client Checking<sup>SM</sup> account OR
* Meet Chase Military Banking requirements

For complete details on all requirements to avoid the MSF, please review the Additional Banking Services and Fees for Business Accounts at chase.com/business/disclosures or visit a Chase branch.



July 01, 2025 through July 31, 2025

Account Number: ███████

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/07 | ███████ | $291.20 |
| 07/11 | ███████ | 2,129.55 |
| 07/17 | ███████ | 8,100.00 |
| 07/18 | ███████ | 485.00 |
| 07/22 | ███████ | 11.05 |
| 07/25 | ███████ | 2,142.13 |
| **Total Deposits and Additions** | | **$13,158.93** |



## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|-----------|-------------|-----------|--------|
| | | | |
| **Total Checks Paid** | | | |



If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

\* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.



July 01, 2025 through July 31, 2025

Account Number: ██████████



## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| ██ | ████████████████████████ | ██ |
| ██ | ████ ████████████ | ██ |
| ██ | █████████████████████ | ██ |
| | | |

**Total ATM & Debit Card Withdrawals** ████

## ATM & DEBIT CARD SUMMARY



## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|



July 01, 2025 through July 31, 2025

Account Number: ██████████

## ELECTRONIC WITHDRAWALS *(continued)*



| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|

**Total Electronic Withdrawals** ██████

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 07/01 | $33,115.94 | 07/14 | 17,844.84 | 07/23 | 19,671.28 |
| 07/02 | 31,911.44 | 07/15 | 17,344.84 | 07/24 | 19,645.28 |
| 07/03 | 31,748.32 | 07/16 | 16,844.84 | 07/25 | 21,787.41 |
| 07/07 | 30,579.48 | 07/17 | 21,684.08 | 07/29 | 21,272.67 |
| 07/08 | 30,339.48 | 07/18 | 22,169.08 | 07/30 | 19,397.83 |
| 07/09 | 28,238.85 | 07/21 | 22,068.98 | 07/31 | 19,057.83 |
| 07/11 | 28,618.40 | 07/22 | 22,064.30 | | |



July 01, 2025 through July 31, 2025

Account Number:



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will provide provisional credit to your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts,** our practice is to follow the procedures described above as detailed in your Deposit Account Agreement or other applicable agreements, but we are not legally required to do so. For example, we require you to notify us no later than 30 days after we sent you the first statement on which the error appeared. We may require you to provide us with a written statement that the disputed transaction was unauthorized. We are also not required to give provisional credit.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS**: Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your Deposit Account Agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**

**CHASE**

July 01, 2025 through July 31, 2025

Account Number:

This Page Intentionally Left Blank

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

17609 Ventura Blvd., Suite 314, Encino, CA 91316.

A true and correct copy of the foregoing document entitled (*specify*): Omnibus Reply in Support of First Amended Chapter 11 Plan of Reorganization; Declaration of Edmon Muradyan in Support Thereof

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 08/21/2025 _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 08/21/2025 _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor's principal via email: not listed for privacy purposes

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/21/2025 | Gabriela Hansen | /s/ Gabriela Hansen |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**1.** <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) [CONTINUED]**</u>:

- <u>Counsel for D. Johnson</u>: **Yana G Henriks**    yhenriks@law-mh.com, rmcmurray@law-mh.com;sridgill@law-mh.com;1457576420@filings.docketbird.com;ndilts@law-mh.com;cpinto@law-mh.com;dpham@law-mh.com;lburdeos@law-mh.com;paralegal@law-mh.com;apham@law-mh.com;dgharibian@law-mh.c
- <u>Subchapter V Trustee</u>: **Gregory Kent Jones (TR)**    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
- <u>Counsel for Debtor</u>: **Roksana D. Moradi-Brovia**    Roksana@rhmfirm.com, matt@rhmfirm.com; russ@rhmfirm.com; sloan@rhmfirm.com; susie@rhmfirm.com; priscilla@rhmfirm.com; rebeca@rhmfirm.com; rosario@rhmfirm.com; gabriela@rhmfirm.com; david@rhmfirm.comCounsel for US Trustee: **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- <u>Counsel for DOL</u>: **Nisha Parekh**    parekh.nisha@dol.gov, orlov.boris@dol.gov
- <u>Counsel for Debtor</u>: **Matthew D. Resnik** matt@rhmfirm.com, roksana@rhmfirm.com; russ@rhmfirm.com; sloan@rhmfirm.com; susie@rhmfirm.com; priscilla@rhmfirm.com; rebeca@rhmfirm.com; rosario@rhmfirm.com; gabriela@rhmfirm.com; david@rhmfirm.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov