| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Roksana D. Moradi-Brovia (Bar No. 266572)<br>W. Sloan Youkstetter (Bar No. 296681)<br>**RHM LAW LLP**<br>17609 Ventura Blvd., Suite 314<br>Encino, CA 91316<br>**Telephone:** (818) 285-0100<br>**Facsimile:** (818) 855-7013<br>roksana@RHMFirm.com<br>sloan@RHMFirm.com | |
| ☒ *Attorney for:* Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| In re:<br><br>SPECIAL UNIT SECURITY INC.,<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:22-bk-15668-VZ<br>CHAPTER: 11 |
|---|---|
| | **SUBCHAPTER V PLAN OF REORGANIZATION**<br><br>[11 U.S.C. §§ 1123, 1181, 1189, 1190] |
| | ☐ Initial Plan<br>☐ 1st Amended Plan<br>☒ 2nd Amended Plan<br><br>For information on court hearings,<br>see the separately filed notice(s) of hearing. |

On (*specify the "petition date"*) <u>October 18, 2022</u>, the Debtor filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code").  This 1st Amended Subchapter V Plan of Reorganization ("**Plan**") is filed by the Debtor pursuant to 11 U.S.C. § 1189.

**PLAN**. The terms regarding classification and treatment of claims and interests, located at Sections **VIII – XI** of the Plan, comply with the requirements of 11 U.S.C. § 1123, including the proposed treatment of claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners.  **The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone**; however, if the Plan is confirmed, the terms will bind the Debtor and any holders of claims or interests treated by the plan.

**DISCLOSURES AND FINANCIAL PROJECTIONS**.  Sections **I – VII** of the Plan provide disclosures and financial projections and describe the assumptions that underlie the Plan and how the Plan will be executed.  **This information is for explanatory purposes only and is as accurate as possible.**

**SUPPORTING EXHIBITS AND DECLARATIONS**.  Concurrent with filing this Plan, the Debtor is filing a document titled Exhibits and Declarations in Support of Subchapter V Plan of Reorganization ("Plan Exhibits and Declarations") to supplement and support the disclosures and financial projections set forth in Sections I - VII of the Plan.

Any interested party desiring further information should contact the attorney for the Debtor (or the Debtor if the Debtor is not represented by an attorney); contact information is identified above in the box at top left of this page.

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                    Page 1                    **VZ SUBCHAPTER.V.PLAN**

| **NOTE ABOUT CITATIONS** |
|---|
| **"Chapter, section and §" references** are to 11 U.S.C. §§ 101-1532 of the Bankruptcy Code.<br>**"FRBP" references** are to the Federal Rules of Bankruptcy Procedure.<br>**"LBR" references** are to the Local Bankruptcy Rules for the Central District of California. |

# TABLE OF CONTENTS

| | **DISCLOSURES AND FINANCIAL INFORMATION** | **Page** |
|---|---|---|
| I. | General Disclaimer | 3 |
| II. | Type of Plan of Reorganization; Important Dates | 3 |
| III. | Description of Debtor's Past and Future Activities, Operations and Events Precipitating Bankruptcy Filing | 3 |
| IV. | Definitions and Preliminary Information | 5 |
| V. | Source of Money to Satisfy Claims and Interests | 8 |
| VI. | Assets and Liabilities of the Estate | 11 |
| VII. | Liquidation Analysis; Treatment of Nonconsenting Members of Consenting Class | 11 |
| | **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** | |
| VIII. | Treatment of Claims and Interests | 12 |
| | A. Post-Petition Domestic Support Obligation: Pay Before Plan is Confirmed | 12 |
| | B. Assumption and Rejection of Executory Contracts and Unexpired Leases | 12 |
| | C. Unsecured Claims: Administrative Expenses, Taxes | 13 |
| | D. CLASS # 1: Priority Unsecured Claims | 15 |
| | E. CLASS # 2: Unsecured Claims: Nominal and General | 15 |
| | F. CLASS # 3, # 4 and #5: Secured Claims | 16 |
| | G. Equity Security Interests and Other Ownership Interests | 17 |
| IX. | Unclaimed or Undeliverable Plan Distributions | 18 |
| X. | Effect of Confirmation | 18 |
| XI. | Appendices of Additional Claims Not Identified in Sections VIII.A – VIII.F | 19 |
| | Proof of Service (Refer to Notice of Dates and Deadlines for Service Protocol) | 20 |

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                                    Page 2                                    **VZ SUBCHAPTER.V.PLAN**

# I.  GENERAL DISCLAIMER

PLEASE READ THIS DOCUMENT CAREFULLY, INCLUDING THE SEPARATELY FILED PLAN EXHIBITS AND DECLARATIONS.  IT EXPLAINS WHO IS ENTITLED TO (A) VOTE TO ACCEPT OR REJECT THE PLAN, AND (B) FILE AN OBJECTION TO CONFIRMATION OF THE PLAN.  IT ALSO IDENTIFIES THE TREATMENT THAT CREDITORS AND INTEREST HOLDERS (EQUITY SECURITY INTERESTS OR OTHER OWNERSHIP INTERESTS) CAN EXPECT TO RECEIVE UNDER THE PLAN, IF THE PLAN IS CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED ON TO FORMULATE THIS DOCUMENT ARE IN THE PLAN EXHIBITS AND DECLARATIONS.  ALL REPRESENTATIONS ARE TRUE TO THE BEST KNOWLEDGE OF THE DEBTOR.  UNLESS THE COURT ORDERS OTHERWISE, NO REPRESENTATIONS ARE AUTHORIZED CONCERNING THE DEBTOR THAT ARE NOT CONSISTENT WITH INFORMATION CONTAINED IN THIS PLAN.

AFTER CAREFULLY REVIEWING THIS DOCUMENT AND THE PLAN EXHIBITS AND DECLARATIONS, PLEASE REFER TO THE SEPARATELY FILED NOTICE OF DATES RELATED TO A HEARING ON MOTION TO CONFIRM THE PLAN.   THAT NOTICE WILL IDENTIFY THE DATES AND DEADLINES TO FILE DOCUMENTS AND SUBMIT A BALLOT.

# II.  TYPE OF PLAN OF REORGANIZATION;  IMPORTANT DATES

Payments and treatments under the Plan have a start date ("**Effective Date**"), a period of time after the Effective Date to continue payments ("**Plan Term**"), and a final payment date ("**Final Payment**").

| Plan Type | Effective Date | Plan Term | Final Payment Date |
|---|---|---|---|
| ☐ Liquidating: *See Section V.A.2 below for anticipated sale(s)* <br> ☒ Operating: *See Section III below* | ☒ 14 days after order confirming Plan ***(est. February 1, 2026)*** <br><br> ☐ Other date: | ☒ <u>5 years</u>; or <br><br> ☐ _____ months | <u>January 1, 2031</u> *(estimated)* |

# III.  DESCRIPTION OF DEBTOR'S PAST AND FUTURE ACTIVITIES, OPERATIONS AND EVENTS PRECIPITATING BANKRUPTCY FILING

## A.  PAST AND FUTURE ACTIVITIES OR BUSINESS OPERATIONS

1. **Debtor's Status**.  The Debtor is:

   a. ☐ an individual or sole proprietor:

      ☐ From the dates of _____ to _____, the Debtor was <u>employed by</u> _____, a business that conducted or provided the following services:

      ☐ From the dates of _____ to _____, the Debtor was <u>self-employed</u> and conducted or provided the following services:

   b. ☒ organized as a ☒ corporation or ☐ partnership or ☐ LLC or ☐ Other**:** _____ .
      This entity was formed in the year <u>2013</u> and during the years ~~of~~ <u>since then,</u> the Debtor conducted <u>100%</u> percent of its business activity in ~~the city of~~ <u>Southern California.</u>

2. **Past Activities and Operations**.  Before this bankruptcy case was filed, the Debtor:

   ☒ provided the following services for pay: <u>fully licensed security services/private patrol operator.</u>

   ☐ manufactured or sold the following products:

   ☐ was in the business of renting real estate.  [see **Plan Exhibits and Declarations** (Exhibit C) for a detailed description of Debtor's property(ies) including locations, square footage, occupancy rates, etc.]

   ☐ was in the business of developing real estate.  [see **Plan Exhibits and Declarations** (Exhibit C) for a detailed description of Debtor's property(ies) including locations, size of lot(s), stage of development, etc.]

   ☐ other:

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                                    Page 3                                    **VZ SUBCHAPTER.V.PLAN**

3. **Future Activities and Operations**.  The Debtor ☒ will, or ☐ will not continue some or all of these activities and operations, as described below:

Operations will continue as before the bankruptcy case was filed.

B.  **FACTORS THAT LED TO FILING THIS BANKRUPTCY CASE** (*Describe briefly*):

The Debtor is a California corporation, formed in August 2013.  Edmon Muradyan is the Chief Executive Officer and sole shareholder.  The Debtor provides security services throughout Southern California.  It is fully licensed as a private patrol operator by the State of California.

Historically, the Debtor has been generally profitable; however, multiple lawsuits by former employees for wage and hour labor claims forced the Debtor to seek financial reorganization.

C.  **ACTIONS TAKEN TO SOLVE FINANCIAL PROBLEMS.**  The Debtor took the following action to solve financial problems that led to filing this bankruptcy case:

**1. Actions Taken Before Petition Date: October 18, 2022**

Prepetition, the Debtor was defending against multiple wage and hour labor claims in state court.  The cost of defending was a significant drain on the working capital, which significantly impacted the business.

Mr. Muradyan has a good reputation in the security community, and historically, the Debtor continually picks up new business by word of mouth.  Additionally, the Debtor sends out mailers to businesses and provides tailored security proposals to bring in new customers.

In order to avoid future employee lawsuits, the Debtor retained ADP to handle payroll and to guide the Debtor with regard to labor law compliance.  The Debtor continues to monitor time sheets to make sure that the guards are taking their required breaks and lunch breaks and accurately reporting the hours that they have worked.

**2. Actions Taken After Petition Date: October 18, 2022**

Despite the litigation cases, the Debtor was cash flow positive in 2022.  *See* October and November Monthly Operating Reports [Docket Nos. 47 and 49].

However, the Debtor struggled financially in 2023.  It lost several large customers and could not generate enough revenue from the remaining customers to cover its operating expenses.  As such, the Debtor was generally cash flow negative.

As a response, the Debtor started to scale down its operation in October 2023 in order to increase cash flow.  The Debtor has walked away from its contracts with tight margins (gross revenue minus the cost to perform the services), thereby focusing on the contracts with higher margins.  The Debtor has reduced the number of guards it employs as that constitutes the vast majority of its monthly expenses.

Thus, the Debtor is focusing on a less is more business model, thereby it wants contracts with market competitive rates but cost the least amount to perform.

D.  **FUTURE FINANCIAL OUTLOOK.**  Debtor believes that its economic health has, or will, improve from its prebankruptcy state for the following reasons. (*Describe briefly*)

As mentioned in the previous section, the Debtor struggled for most of 2023.  However, the Debtor has become consistently cash flow positive as it reduced its monthly revenue and operating expenses starting in November 2023 through the end of 2024.  However, the Debtor has remained slightly cash flow negative in 2025, as follows:

| Month | Receipts | Disbursements | Cash Flow |
|---|---|---|---|
| **January 2025 [Docket No. 298]** | $56,155.92 | $54,966.91 | $1,189.01 |
| **February 2025 [Docket No. 301]** | $50,171.25 | $39,767.64 | $10,403.61 |
| **March 2025 [Docket No. 303]** | $54,712.25 | $55,535.27 | ($823.02) |
| **April 2025 [Docket No. 308]** | $76,611.23 | $80,240.35 | ($3,629.12) |
| **May 2025 [Docket No. 318]** | $58,270.25 | $59,288.97 | ($1,018.72) |

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                                        Page 4                                        **VZ SUBCHAPTER.V.PLAN**

| | | | |
|---|---|---|---|
| **June 2025** [Docket No. 320] | $52,384.50 | $54,604.93 | ($2,220.43) |
| **July 2025** [Docket No. 327] | $62,695.25 | $63,108.09 | ($412.84) |
| **August 2025** [Docket No. 330] | $66,198.50 | $61,533.54 | $4,664.96 |
| **September 2025** [Docket No. 331] | $67,086.75 | $76,244.56 | ($9,157.81) |
| **October 2025** [Docket No. 334] | $73,451.74 | $73,576.03 | ($124.29) |
| **Totals** | **$617,737.64** | **$618,866.29** | **($1,128.65)** |
| **Average** | **$61,773.76** | **$61,886.63** | **($112.87)** |

As such, the Debtor recognizes that its margins will probably remain tight for the foreseeable future. Therefore, the Debtor will obtain gift contributions from Muradyan's other business, Marshall Security Training Academy, to cover any shortfall during the Plan term.

On December 14, 2025, the Debtor settled with the United States Department of Labor (the "US DOL") via a Consent Judgment and Permanent Injunction entered on January 2, 2025 (the "Judgment") [Docket No. 9 in the Case No. DC-2:24-cv-10854-JPR]; thereafter the Debtor filed the *Motion to Approve Consent Judgment and Permanent Injunction* on January 28, 2025 [Docket No. 288]; the Court entered an order granting the motion on March 4, 2025 [Docket No. 299]. The Debtor has no obligation to pay the financial component of the judgment.

**E.**    **MANAGEMENT OF THE DEBTOR** (If Debtor is a business entity or will be organized as a business entity):

☒ See details below; OR
☐ **See Exhibit**

1.    Names of persons managing the Debtor's business affairs, and job title:

   a.   During the bankruptcy case: Edmon Muradyan

   b.   After the Plan is confirmed: Edmon Muradyan

2.    Proposed compensation to persons listed above:

   a.   During the bankruptcy case: $20,000/month (7th and 21st of each month) pursuant to the Insider Compensation; however, Mr. Muradyan stopped receiving compensation in 2023.

   b.   After the Plan is confirmed: Mr. Muradyan will not receive wages postpetition, and he will only retain his stock in the Debtor.

3.    Job description and qualifications of persons listed above: Day-to-day operations, sales, purchasing, books, quotas, management of all aspects of the business.

4.    Affiliation of persons listed above to Debtor: Chief Executive Officer and sole shareholder

**F.**    **PROPOSED ☒ DISBURSING AGENT ☐ MULTI-PURPOSE POST-CONFIRMATION AGENT** will pay all amounts due under the Plan from a fund hereby authorized to be opened. This fund shall be maintained in a segregated, interest-bearing account in a depository approved by the United States trustee for the Central District of California for deposits of funds by trustees.

1.    Name of person responsible for collecting money intended for distribution to claimants and transmitting it to claimants: Edmon Muradyan

2.    Disbursing agent's address: 1457 W. El Segundo Blvd., Compton, CA 90222.

3.    Disbursing agent's phone number: (310) 438-2283

4.    Proposed compensation for person listed above: None

5.    Job description and qualifications of person listed above: Day to day operations, sales, purchasing, books, quotas, management of all aspects of the Debtor's business.

6.    Affiliation of person listed above, to Debtor: Chief Executive Officer and sole shareholder

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                                    Page 5                                    **VZ SUBCHAPTER.V.PLAN**

# IV. DEFINITIONS AND PRELIMINARY INFORMATION

## A. CLAIMS AND INTERESTS

1. Claims [§§ 101(5), (7) and (12); § 102(2)]; Interests [§ 101(16)]. "Claims" refers to all debts and other obligations of the Debtor or against property of the Debtor. Claims treated under the Plan are included whether the claim arose before or after the bankruptcy case was filed, and whether or not a clam or obligation involves a cash payment. "Interests" refer to equity securities and any other ownership stakes in the Debtor.

2. Creditors [§ 101(10)]; Interest Holders [§ 101(17)]. A creditor refers to the holder of any claim treated under the Plan, even if the creditor did not file a proof of claim. An interest holder refers to a holder of an interest treated under the Plan, even if the interest holder did not file a proof of interest.

## B. ALLOWED, DISALLOWED, AND DISPUTED CLAIMS AND INTERESTS

1. Allowed Claims and Interests. A claim or interest is allowed if it is timely and properly scheduled or filed, and (a) was not objected to; or (b) was objected to or was settled by the parties or otherwise determined by a court order. **Allowed claims and interests are treated under the Plan.**

2. Disallowed Claims and Interests. A claim or interest is disallowed if it was timely objected to by the Debtor and the court made a ruling that the claim or interest is disallowed in part or entirely. **Disallowed claims are not treated under the Plan**.

3. Disputed Claims and Interests. A claim or interest is disputed if a ruling on allowance has yet to be made and (a) a proof of claim or interest has been filed or deemed filed and the Debtor or a party in interest has filed an objection; or (b) a proof of claim or interest has not been filed and the Debtor scheduled such claim or interest as disputed, contingent, unliquidated or unknown.

   a. Timeline of Objection Process.

      (1) The last date to file a proof of claim or interest was: <u>December 27, 2022</u>; and

      (2) The last date to hold a hearing on any objection to claim or interest was: <u>May 31, 2023</u>

   b. Intent to Object to Claims and Interests.

      ☒ Debtor completed this process and does not anticipate objecting to any other claim or interest; or

      ☐ The objection process is pending, or will begin, for the following claims or interests:*

| Creditor or Interest Holder | # of Proof of Claim / Interest | Amount of of Claim / Interest | Basis of Objection to Claim or Interest |
|---|---|---|---|
|  |  |  |  |

   c. Delayed Distribution on Disputed Claims and Interests; Settlement: ~~No distribution will be made on a disputed portion of a claim or interest unless allowed by a final, non-appealable order.~~

   FRBP 9019 authorizes the Debtor to settle disputed claims and interests with court approval; but court approval is not required if a proposed settlement does not exceed $50,000.

   The Debtor is required to reserve funds to pay the amount a creditor or interest holder would receive if the claim or interest is allowed in full (unless the court approves a different amount).

   To the extent a disputed claim or interest is disallowed, (a) the funds that had been reserved for such claims and interests will be distributed as provided in the Plan to other creditors or interest holders of the same class (or as ordered by the court); or (b) if this box is checked ☐ then such funds will be distributed to the Debtor.

## C. POTENTIAL § 1111(b) ELECTIONS. Pursuant to 11 U.S.C. § 1111(b) and FRBP 3014 a partially secured claim ~~to~~ may be treated as fully secured under certain conditions, notwithstanding § 506(a). Creditors should consult their attorney to evaluate if a § 1111(b) election is available and is in their best interest.

☐ The court set _____ as the deadline for making an election under § 1111(b).

☒ The court has not set a deadline for making an election under § 1111(b).

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*    Page 6    **VZ SUBCHAPTER.V.PLAN**

**D.  VOTING BY BALLOT; FILING OBJECTION TO CONFIRMATION OF PLAN**.

1.  **Introduction**. "Voting" to accept or reject the Plan is different from "objecting" to confirmation of the Plan.

    a.  **What does voting mean**?  Voting means a creditor or interest holder submits a ballot to the Debtor. Ballots are counted so the court can determine (1) which claims, interests, and classes of claims and interests accepted proposed treatment, and (2) which classes of claims and interests rejected the proposed treatment.  Whether each class "accepts" or "rejects" treatment is only one factor the court must consider when determining whether to grant the Debtor's request to confirm the Plan.

    b.  **What does "objecting to confirmation" mean**?  Objecting to confirmation means a party files and serves a document that contains legal and factual assertions as to whether the Debtor satisfied its requirements for the court to confirm the Plan [11 U.S.C. § 1129].

    c.  **Notice of Deadlines for Voting and Objecting**. The Debtor will file and serve a Notice of Dates Related to Confirmation of Plan and Deadlines to (A) Submit Ballot; (B) File Preliminary Objection to Confirmation of Plan; and (C) File Response to Motion to Confirm Plan ("**Notice of Deadlines Related to Confirmation**").

2.  **Voting by Ballot.**

    a.  **Who May Vote (§ 1124).**

        **(1)  Not Entitled to Vote.** The Bankruptcy Code treats many creditors and interest holders as <u>having accepted the Plan</u> without a vote because they are treated under the Plan exactly as required by the Bankruptcy Code.  The Bankruptcy Code also treats creditors and interest holders as <u>having rejected the Plan</u> without a vote if (a) the creditor or interest holder is to receive no distribution under the Plan; (b) an objection has been filed to that party's claim or interest and the objection has not been resolved prior to filing the Plan; or (c) Debtor scheduled a claim or interest as contingent, disputed, unliquidated or unknown and the creditor or interest holder has not filed a proof of claim or interest.

        **(2)  Entitled to Vote**.  Creditors and interest holders are entitled to vote when their <u>claim or interest is allowed and it is impaired</u>, i.e. the Plan alters the contractual, legal or equitable rights of the creditor or interest holder.  <u>In addition</u>, if the Debtor has objected to a scheduled claim or interest as contingent, disputed, unliquidated or unknown, or a proof of claim or interest has not been filed, and the creditor or interest holder wants to vote, the creditor or interest holder must file a motion to have its claim or interest allowed for voting purposes in time for that motion to be heard before the hearing on confirmation of the Plan.

| **Classes Entitled to Vote Because the Class is Impaired**: | **Classes Not Entitled to Vote Because the Class is Unimpaired**: |
|---|---|
| **Class 1a and Class 2b** | |

    A creditor or interest holder that disputes Debtor's characterization of its claim or interest as unimpaired and wants to vote may request a finding of impairment from the Court in order to obtain the right to vote.

    b.  **Effect of Vote**. The Plan can be confirmed if (i) it is accepted by each impaired class because a majority in number and at least two-thirds in dollar amount of the claimants in that class who timely voted to accept the Plan; or (ii) it is not accepted by certain impaired class(es), but the court determines the Plan does not discriminate unfairly and is "fair and equitable" [as defined by §1191(b)] to all rejecting classes of claims or interests, or interest holders, and it meets all other criteria required for confirmation.

    c.  **How to Vote**. A ballot will accompany the Notice of Deadlines Related to Confirmation.  A voting creditor or interest holder must follow the instructions set forth in the Notice of Deadlines Related to Confirmation.  A creditor or interest holder whose claim or interest is allowed as partly secured and partly unsecured is entitled to vote in each capacity by delivering one ballot for the secured part of the claim or interest and another ballot for the unsecured portion of the claim or interest.

3.  **Filing an Objection to Confirmation of the Plan**

    a.  **Who May Object.**  Any creditor, interest holder or other party may object to confirmation of the Plan.

    b.  **How to Object.** Follow the instructions set forth in the Notice of Deadlines Related to Confirmation.

    c.  **Effect of Objection**. The court will consider all objections that are timely and properly filed and served. If the objection has merit, it may result in the court denying the Debtor's request to confirm the Plan.

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                                              Page 7                                              **VZ SUBCHAPTER.V.PLAN**

## V.  SOURCE OF MONEY TO SATISFY CLAIMS AND INTERESTS

The Plan cannot be confirmed unless the Court finds it is "feasible"; pursuant to 11 U.S.C. §§ 1190(1)(C) and 1191(c), this means the Debtor submitted evidence establishing that the Debtor will have sufficient funds available to satisfy all expenses, including the scheduled payments to claimants discussed in section VIII below.

**A.  NON-INCOME SOURCES TO FUND PLAN.**  See **Plan Exhibits and Declarations** (Exhibits D and E) for income and other contributions that will fund the Plan.  For other funding sources (non-income), see below:

1. Loan or Line of Credit: ☒ None    ☐ Loans or Lines of Credit are as follows:

| NAME OF LENDER | CONTRIBUTION TYPE | TERM | INT RATE | PROCEEDS |
|---|---|---|---|---|
| (a) | ☒ Loan  ☐ Credit Line | | % | $ |
| (b) | ☐ Loan  ☐ Credit Line | | % | $ |

2. Sales of Property:

☒ None

☐ All or substantially all of Debtor's assets will be sold.  Terms of proposed sale(s) and evidence of the financial solvency of proposed buyer(s) is attached in **Plan Exhibits and Declarations** (Exhibit _____)

☐ The specified property of Debtor is planned to be sold as follows:

| PROPERTY DESCRIPTION: | | PROPOSED SALE DATE | PROPOSED SALE PRICE | PROCEEDS TO FUND THE PLAN |
|---|---|---|---|---|
| (a) | ☐ Property in CLASS #3, #4 or #5: **Check only ONE**:<br>☐ 3a  ☐ 3b  ☐ 3c  ☐ 3d  ☐ 3e<br>☐ 4a  ☐ 4b  ☐ 4c  ☐ 4d  ☐ 4e<br>☐ 5a  ☐ 5b  ☐ 5c  ☐ 5d  ☐ 5e | | $ | $ |
| (b) | ☐ Property in CLASS #3 or #4: **Check only ONE**:<br>☐ 3a  ☐ 3b  ☐ 3c  ☐ 3d  ☐ 3e<br><br>☐ 4a  ☐ 4b  ☐ 4c  ☐ 4d  ☐ 4e<br>☐ 5a  ☐ 5b  ☐ 5c  ☐ 5d  ☐ 5e | | $ | $ |

☐ See **Plan Exhibits and Declarations** (Exhibit _____) for additional anticipated sales of property.

3. **Adversary Proceedings**: ☒ No adversary proceedings    ☐ Adversary proceedings are as follows:

| ADVERSARY PROC. DESCRIPTION:  FRBP 7001 and LBR 7004-1 require a summons/complaint. | DATE FILED OR TO BE FILED | ADV. PROC. NUMBER | ANTICIPATED RECOVERY |
|---|---|---|---|
| (a) | | | $ |
| (b) | | | $ |

☐ See **Plan Exhibits and Declarations** (**Exhibit _____**) for additional adversary proceedings.

**B.  PAYMENTS ON THE EFFECTIVE DATE**.  This section demonstrates the Plan is feasible on the Effective Date.

| (1) CLAIMS AND EXPENSES TO BE PAID ON THE EFFECTIVE DATE | AMOUNT |
|---|---|
| Cure Payments: Executory Contracts, Unexpired Leases:  Section VIII.B.2. | $0 |
| Administrative Claims + Statutory Costs/Charges:  Section VIII.C.1. + court costs | $2,588.13 |

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                                        Page 8                                        **VZ SUBCHAPTER.V.PLAN**

| | |
|---|---|
| Tax Claims:  § 507(a)(8) and § 1129(a)(9)(C):  Section VIII.C.2. | $4,914.86 |
| § 507(a)(1): - Wage and Commission Claims:  Section VIII.D.1. | $1,706.25 |
| Nominal Unsecured Claims:  Section VIII.E.1. | $0 |
| First Payments:  General Unsecured Claims:  Section VIII.E.2. | $100 |
| Arrearages + First Payments:  Secured Claims:  Sections VIII.F. | $0 |
| TOTAL TO BE PAID ON THE EFFECTIVE DATE: | $9,310.62 |
| | |
| **(2) SOURCE OF FUNDS ON THE EFFECTIVE DATE** | |
| Cash on Hand: (Estimated funds in the DIP accounts and gross profit net operating expenses) | $5,000 |
| Loan or Line of Credit:  Described above in: ☐ V.A.(1a)    ☐ V.A.(1b) | $0 |
| Sale of Property: Described above in: ☐ V.A.(2a)    ☐ V.A.(2b) | $0 |
| Adversary Proceeding Recovery: Described above in: ☐ V.A.(3a)    ☐ V.A.(3b) | $0 |
| Other Sources: ☒ (*identify*): Gift contributions from Edmon Muradyan | $9,515 |
| TOTAL FUNDS AVAILABLE ON THE EFFECTIVE DATE: | $14,514.96 |
| | |
| **(3) CASH AVAILABLE AFTER PAYMENTS MADE ON THE EFFECTIVE DATE:** | $5,000 |

C. **PAYMENTS DURING THE PLAN TERM**.  See **Plan Exhibits and Declarations** (**Exhibit D**) for projections of cash flow for the duration of the Plan, to help determine the Plan is feasible during the plan term.  The focus is on projected cash receipts and disbursements.  All non-cash items such as depreciation, amortization, gains and losses are omitted.  A positive number reflects a source of cash; a (negative number) reflects a use of cash. **Plan Exhibits and Declarations** (**Exhibit D**) also contains details of assumptions that underlie the projections.

D. **FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE**
See **Plan Exhibits and Declarations** (**Exhibit E**) for three types of financial documents related to past activities. The two time periods are: (1) the most recent twelve-month calendar year; and (2) all months subsequent thereto. The financial documents include: 2022 profit and loss statement, on a cash basis; 2023 profit and loss statement, on a cash basis; 2024 profit and loss statement, on a cash basis; and 2025 profit and loss statement from January 1, 2025 through November 30, 2025, on a cash basis, as of November 30, 2025.

Financial reports for Marshall Security Training Academy: the 2025 profit and loss statement ("P&L"), year to date, on a cash basis, as of November 30, 2025; and the Marshall Security Training Academy CitiBank account statements for July 2025 through November 2025 (Mr. Muradyan is the owner of the entity).

E. **TAX CONSEQUENCES OF THE PLAN.**

   1. <u>To the Debtor</u>**:**  Tax consequences to the Debtor are: the Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on its tax liability.  The Debtor will stay current with tax obligations to the taxing agencies (IRS and FTB) as set forth in the income and expense projections.

   2. <u>To Creditors and Interest Holders</u>:  Creditors and interest holders should consult their advisors regarding potential tax effects of the Plan; nevertheless:

      ☐ The Debtor believes tax consequences are:

      ☒ The Debtor is not certain of tax consequences, because: the Debtor makes no representations regarding the potential tax consequences to creditors as the Tax Code embodies many complicated rules that make it difficult to state completely and accurately all the tax implications of any action.

F. **EXPLANATION OF RISK FACTORS AND POTENTIAL FLUCTUATIONS WHEN IMPLEMENTING THE PLAN**.

| RISK FACTOR | EXPLANATION OF RISK AND FLUCTUATIONS |
|---|---|
| ☒ Business/Economic<br>☐ Sale of Property<br>☐ Balloon Payment<br>☐ Int. Rate Adjustment<br>☐ Other | As set forth in Exhibit D (the Projections) and as set forth in detail in Mr. Muradyan's attached declaration, the Plan is funded by the revenue generated by the operation of the business and contributions from Mr. Muradyan's other business, Marshall Security Training Academy. |
| | Historically, the Debtor's gross revenue has been much greater than what it has been generating since November 2023, but as stated previously, the Debtor significantly downsized its operation.  All of the Debtor's client contracts are at will with set terms, including the hourly service rates and the hours. |
| | As such, the Projections reflect the lower gross revenue.  However, the Debtor anticipates growth over the Plan term, but it intends to grow slowly and steadily (increasing approximately 5% to 6%) in order to keep its expenses manageable in order to consummate the Plan (as revenues grow, expenses will increase). |
| | The Debtor anticipates expenses will increase due to inflation.  Payroll and the workers' compensation premiums can fluctuate due to turnover.  As such, the Projections include annual increases, as enumerated therein, during the Plan term.  However, the Debtor does not anticipate any drastic increases to its expenses, as they are relatively consistent, other than potential spikes as to the payroll and workers' compensation premiums.  If the Debtor obtains additional contracts, payroll and the workers' compensation insurance will increase accordingly. |
| | As stated previously and as shown by the Projections, the Debtor is not projecting to be cash flow positive during the Plan term.  Therefore, the Debtor will obtain gift contributions from Marshall Security Training Academy, to cover any shortfall during the Plan term. |
| | The Debtor believes that it must hold a minimum of $5,000 in its accounts to maintain a healthy financial condition in order to pay COGS and operating expenses in a month where revenue is down.  The Debtor's expenses also can fluctuate due to a variety of causes, including, but not limited to needing to send additional guards to a site guard turnover, and/or additional contracts.  As such, the Debtor will have months when it will be cash flow negative (the operating expenses exceed the gross revenue).  The Debtor must have sufficient funds at all times to pay its bills without resorting to using credit. |
| | The Plan, as proposed, contains inherent risks.  The Debtor is subject to forces outside of its control, such recession/depression, inflation, changes in labor/wage laws, and other economic issues.  Each could result in a loss of revenue and/or increase operating expenses, specifically, the Debtor could lose clients, have difficulty collecting payment from its clients, or its workers' compensation insurance premiums and/or wages could drastically increase during the Plan term. |
| | However, the Debtor believes it can now better weather future economic issues with the gift contributions. |
| | As such, the Debtor is confident that the Debtor will be able to meet all of its financial obligations under the Plan. |
| | Because the Plan contemplates payments to certain classes of creditors over time following the Effective Date, it is possible that, based on factors that are either not apparent at this time or do not exist at this time, that the Debtor will not have sufficient cash flow to pay all of the obligations created under the Plan.  For this reason, the projections cannot be guaranteed to be completely accurate. |

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                                   Page 10                          **VZ SUBCHAPTER.V.PLAN**

| | |
|---|---|
| | The projected ending cash flow for each month should not be interpreted to mean that this constitutes disposable income that must be paid to the unsecured creditors. The Debtor's projections are attempting to conservatively demonstrate that the Debtor is reasonably likely to be able to make all its proposed payments to its creditors. |
| ☐ Business/Economic<br>☐ Sale of Property<br>☒ Balloon Payments<br>☐ Int. Rate Adjustment<br>☐ Other | The Projections has balloon payments in month 20 (September 2027) to the EDD for an administrative claim of $1,992.58, the IRS for a priority claim of $14,951.13, and the EDD for a priority claim of $4,424.94. The balloon payments will be paid by Marshall Security Training Academy, as the Debtor will not have the funds available to make those payments. The total balloon due will be $21,367.65.<br><br>The Debtor believes that Marshall Security Training Academy will have sufficient funds to make the balloon payments based on the current funds available in its accounts and the based on the cash flow from 2025. Attached as Exhibit "G" to the Declaration in Support of Subchapter V Plan and incorporated herein are the 2025 profit and loss statement ("P&L"), year to date, on a cash basis, as of November 30, 2025; and the Marshall Security Training Academy CitiBank account statements for July 2025 through November 2025.<br><br>Although there is a risk that Marshall Security Training Academy cannot or will not make the balloon payments, that risk is mitigated while Mr. Muradyan is operating that business. Mr. Muradyan has an incentive to continue to operate the Debtor and to consummate this Plan as the Plan seeks to resolve the taxing liabilities and the wage/labor claims against the Debtor. |
| ☐ Business/Economic<br>☐ Sale of Property<br>☐ Balloon Payment<br>☐ Int. Rate Adjustment<br>☒ Other: Contributions | As stated herein and as shown in the Projections, the Debtor is projecting to be slightly cash flow negative during the Plan term. Therefore, the Debtor will obtain monthly gift contributions from Marshall Security Training Academy, to cover the monthly shortfall, specifically assisting with making the Plan payments. The Debtor is projecting that the monthly contributions will not exceed $10,000 during the first year of the Plan, but they will be drastically reduced after the balloon payments are made in month 20.<br><br>The Debtor believes that Marshall Security Training Academy will have sufficient funds to contribute monthly based on the current funds available in its accounts and the based on the cash flow from 2025. Attached as Exhibit "G" to the Declaration in Support of Subchapter V Plan and incorporated herein are the 2025 profit and loss statement ("P&L"), year to date, on a cash basis, as of November 30, 2025; and the Marshall Security Training Academy CitiBank account statements for July 2025 through November 2025.<br><br>Although there is a risk that Marshall Security Training Academy cannot or will not make the monthly contributions, that risk is mitigated while Mr. Muradyan is operating that business. Mr. Muradyan has an incentive to continue to operate the Debtor and to consummate this Plan as the Plan seeks to resolve the taxing liabilities and the wage/labor claims against the Debtor. |
| ☐ Business/Economic<br>☐ Sale of Property<br>☐ Balloon Payment<br>☐ Int. Rate Adjustment<br>☐ Other | |

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                                    Page 11                                    **VZ SUBCHAPTER.V.PLAN**

## VI. ASSETS AND LIABILITIES OF THE ESTATE

A. **ASSETS.  Plan Exhibits and Declarations** (**Exhibit C**) contains a list and fair market values of property of the estate so that parties can assess what assets are at least theoretically available to satisfy claims and interests and evaluate the overall worth of the bankruptcy estate.  Any proposed sale of these assets is discussed in Section **V.A.2** above.

B. **LIABILITIES.  Plan Exhibits and Declarations** (**Exhibit B**) identifies the allowed claims against the estate.  Treatment of allowed claims is explained in section VIII below.

C. **SUMMARY.**  The fair market value of all property of the estate is **$9,921**.  Total liabilities are **$665,054** (consists of tax liabilities, §507 priority claims, and general unsecured claims).

## VII.    LIQUIDATION ANALYSIS; TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS

The Plan must provide that a nonconsenting impaired creditor or interest holder of a consenting class receive at least as much as it would if the Debtor was instead in chapter 7 case.  In chapter 7, the general rule is that the Debtor's assets are sold by a trustee.  Unsecured claims generally share in proceeds only after secured and administrative claims are paid.  Certain unsecured claims get paid before other unsecured claims.  Unsecured claims with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover less under chapter 7 than under chapter 11 for a number of reasons including: (1) for the reasons detailed in **Plan Exhibits and Declarations** (**Exhibit C**), the liquidation value of Debtor's assets is less than its fair market value; (2) in a chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate as reflected in the chart below; and (3) an individual debtor is permitted to exempt a certain amount of the sales proceeds before unsecured claims are paid anything.

| CALCULATION OF ESTIMATED PERCENT RECOVERY | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| **(a)**    <u>Total value of the Debtor's assets</u>:  See **Plan Exhibits and Declarations** (**Exhibit C**) for a list of all property, valuations, and valuation methods. | $27,935 | $28,790 |
| **(b)**    <u>Administrative Expense Claims</u> (Chapter 7 includes the Chapter 7 trustee administrative fees): | <$131,283> | <$121,283> |
| **(c)**    <u>Tax Claims</u>: | <$109,774> | <$109,774> |
| **(d)**    <u>Other Unsecured Claims to be Paid Before General Unsecured Claims</u>: | <$1,706> | <$1,706> |
| **(e)**    <u>Trustee's Fees</u>:  Assuming the chapter 7 trustee disburses the net liquidation value of assets to claimants, 11 U.S.C. § 326 indicates the chapter 7 trustee is entitled to fees of:<br><br>  * 25% on the first $5,000 of all moneys disbursed = **$2,500**,<br>  * 10% on any amount over $5,000 but less than $50,000 = **$4,500**,<br>  * 5% on any amount over $50,000 but not in excess of $1 million = **$**    ,<br>  * 3% on all amounts over $1 million) = **$**    ,<br><br>                **TOTAL TRUSTEE'S FEES =** | <br><br><br><br><br><br><br><br><$3,543> | <br><br><br><br><br><br><br><br>N/A |
| **(f)**    <u>Dollar Amount Available for General Unsecured Claims</u>: (a) minus (b), (c), (d) and (e) = | $(220,607) | $(204,829) |
| **(g)**    <u>Dollar Amount of General Unsecured Claims</u>: = | $560,891 | $560,891 |
| **(h)**    **% recovery on general unsecured claims:** [(g) divided by (h)] x 100% = | 0% | 0% |

*Pursuant to Schedule A/B [Docket No. 19], the Debtor values goodwill as $120,000.  Even if that value is included in the liquidation analysis and a Chapter 7 trustee were able to liquidate it, the general unsecured creditors would still receive no distributions, as follows:

| Net Value of All Assets (total gross value of current assets) | $148,790 |
|---|---|
| Costs of Sale (8% of net value.  Cost of sale may be higher due to the fact that the Trustee is not in Debtor's business and might have difficulty liquidating assets.) | $11,903 |
| Chapter 7 Trustee fees (Chapter 7 Trustee fees are pursuant to 11 U.S.C. Section 326(a).) | $10,689 |
| Chapter 7 Trustee Administrative fees (Chapter 7 administrative fees and costs consist of the attorney fees, CPA fees, and costs of administering the estate.) | $10,000 |
| Chapter 11 Administrative Fees Chapter 11 Administrative Fees (Chapter 11 administrative fees and costs consist of Debtor's attorney fees, CPA Fees, subchapter V trustee fees and costs unpaid during the Chapter 11.) | $121,283 |
| Priority Claims (consisting of tax and wages) | $111,480 |
| Net Liquidation Value | ($116,566) |
| Unsecured Claims | $560,891 |
| Percentage to Unsecured (Percentage to the unsecured is based on the net value minus cost of sale, administration fees and costs consisting of Chapter 11 attorney fees, trustee fee, and priority unsecured claims divided by the general unsecured claims.) | 0% |

## VIII.  TREATMENT OF CLAIMS AND INTERESTS

Below is a summary of who gets paid, in what amount, when, and from what source.  The Debtor is usually not required by law to pay the holder of an unsecured claim or interest everything it would otherwise be entitled to, had a bankruptcy case not been filed.

**A.  DOMESTIC SUPPORT OBLIGATION THAT MUST BE PAID BEFORE PLAN IS CONFIRMED**. [§ 1129(a)(14)] Before the Plan can be confirmed, § 1129(a)(14) requires the Debtor to pay all domestic support obligations that became due after the bankruptcy case was filed.  Domestic support obligations are defined in § 101(14A).

☒  The Debtor did not have domestic support obligations that became due after the bankruptcy case was filed.

☐  The following domestic support obligation became due after the bankruptcy case filed:

| Holder of Domestic Support Claim: | | | |
|---|---|---|---|
| **Statute, Judicial Order, or Administrative Order that Creates the Obligation** | **First Date After Petition Date that Obligation was Due** | **Total Due After Petition Date** | **Date Final Amt** <br> ☐ was paid <br> ☐ will be paid |
| | | | |

☐ **See Appendix ____** for additional domestic support obligation(s).

**B.  ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**. [§ 365]

1.  ☒  There are no executory contracts or unexpired leases.

2.  ☐  **Assumption**. The post-confirmation debtor will perform all related obligations whether arising before or after confirmation of the Plan.  Any arrearages arising before confirmation of the Plan will be paid by the first day of the month following the Effective Date unless the parties agree otherwise or the court finds that a longer payment schedule still provides the creditor with timely cure and adequate assurance of future performance.  Obligations that arise after confirmation of the Plan will be paid as they come due.

☐ **Previously Assumed**:

| DESCRIPTION OF EXECUTORY CONTRACT OR UNEXPIRED LEASE | | DATE OF ORDER TO ASSUME | CURE AMOUNT: Must be paid on Effective Date |
|---|---|---|---|
| (a) | | | $ |

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                                    Page 13                                    **VZ SUBCHAPTER.V.PLAN**

| | | | $ |
|---|---|---|---|
| (b) | | | |

☐ **To be Assumed on the Effective Date.**

| | DESCRIPTION OF EXECUTORY CONTRACT OR UNEXPIRED LEASE | CURE AMOUNT: Must be paid on Effective Date |
|---|---|---|
| (a) | | $ |
| (b) | | $ |

3. ☐ **Rejection.** Claims arising from the rejection of an executory contract or unexpired lease are treated as general unsecured claims in CLASS #2, except to the extent the court orders otherwise.  A claim arising from the rejection must be filed no later than 30 days after the date of the order confirming the Plan.

| | DESCRIPTION OF EXECUTORY CONTRACT OR UNEXPIRED LEASE | |
|---|---|---|
| (a) | | ☐ Rejected: ☐ Order Entered on: <br> ☐ Deemed Rejected on: <br> ☐ To be Rejected on the Effective Date |
| (b) | | ☐ Rejected: ☐ Order Entered on: <br> ☐ Deemed Rejected on: <br> ☐ To be Rejected on the Effective Date |

☐ **See Appendix** ____ for additional executory contracts and unexpired leases to be assumed or rejected.

C. **UNSECURED CLAIMS THAT MUST BE TREATED AS REQUIRED BY § 1129(a)(9)(A) and § 1129(a)(9)(C), UNLESS A CLAIMANT CONSENTS TO A DIFFERENT TREATMENT.** §§ 1129(a)(9)(A) and (C) require that certain claims be treated one at a time, rather than as a class.  Even if another claimant votes to accept a lesser treatment, the claims listed below are not altered.  The debtor must prove to the court that claims are either being treated as 1129(a)(9) requires, or that the holder of the claim agreed to some other treatment.

1. **Administrative Expense Claims** - § 507(a)(2) and § 1129(a)(9)(A). These include: (1) court-approved claims of attorneys and other professionals; and (2) United States trustee fees under 28 U.S.C. chapter 123.

☐ There are no administrative expense claims.

☐ The deadline to file administrative expensive claims is (*date*) _____.

☒ All administrative expense claims ☐ have been filed or ☒ are anticipated to be filed; the claims and amounts indicated below are the amounts requested or anticipated to be requested:

| Holder of Administrative Expense Claim: Gregory Jones, the subchapter V trustee | | | | | | |
|---|---|---|---|---|---|---|
| **Claim Amount** (less paid to date) ☐ Actual ☒ Estimated | **Interest Rate** (if any) | **Amount Paid on Effective Date** | **Amount Paid After Effective Date** | | | |
| | | | **Frequency** | **Each Payment** | **Balloon Pymts** | **Term of Payments** |
| $10,000 | N/A | $416.67 | ☒ Monthly ☐ Quarterly | $416.67 | N/A | 24 months |

| Holder of Administrative Expense Claim: RHM LAW LLP ("RHM") [Debtor's general bankruptcy counsel]** | | | | | | |
|---|---|---|---|---|---|---|
| **Claim Amount** (less paid to date) ☐ Actual ☒ Estimated | **Interest Rate** (if any) | **Amount Paid on Effective Date** | **Amount Paid After Effective Date** | | | |
| | | | **Frequency** | **Each Payment** | **Balloon Pymts** | **Term of Payments** |
| $100,000 | N/A | $1,667 | ☒ Monthly ☐ Quarterly | $1,667 | N/A | 60 months |

**Holder of Administrative Expense Claim:** Employment Development Department ("EDD") [administrative taxes]**

| Claim Amount (less paid to date) ☒ Actual ☐ Estimated | Interest Rate (if any) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
|---|---|---|---|---|---|---|
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| $11,283.16 | 7% | $505.18 | ☒ Monthly ☐ Quarterly | $505.18 (amortized over 24 months) | $1,991.58 | 20 months |

☐ **See Appendix** ____ for additional administrative expense claim(s).

2. **Tax Claims - § 507(a)(8) & § 1129(a)(9)(C).** Must be paid in full within 5 years after the Petition Date.

☐ There are no tax claims    ☒ All tax claims have been filed or scheduled, and are indicated below:

**Holder of Tax Claim:** Internal Revenue Service ("IRS")

| Claim Amount (less paid to date) ☐ Actual ☒ Estimated | Interest Rate (§511) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
|---|---|---|---|---|---|---|
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| $84,704.77 | 7% | $3.792.45 | ☒ Monthly ☐ Quarterly | $3.792.45 (amortized over 24 months) | $14,951.13 | 20 months |

**Holder of Tax Claim:** EDD

| Claim Amount (less paid to date) ☒ Actual ☐ Estimated | Interest Rate (§511) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
|---|---|---|---|---|---|---|
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| $25,069.23 | 7% | $1,22.41 | ☒ Monthly ☐ Quarterly | $1,122.41 (amortized over 24 months) | $4,424.94 | 20 months |

☐ **See Appendix** ____ for additional unsecured claims (not listed in VIII.C) on which voting is not allowed.

☐ **§ 507(a)(2)** – Administrative Expense Claims
☐ **§ 507(a)(8)** – Tax Claims
☐ **§ 507(a)(3)** – Involuntary Gap Claims Allowed Under § 502(f)

D. **UNSECURED CLAIMS THAT MUST BE TREATED AS REQUIRED BY § 1129(a)(9)(B) – CLASS #1.**
§ 1129(a)(9)(B) requires certain unsecured claims to be treated with priority over general unsecured claims, and pay them in full on the Effective Date or as soon as practicable after unless claimants vote as a class to accept deferred payments.  If so, claims are impaired and claimants are entitled to vote to accept or reject the Plan.

☐ There are no claims in CLASS #1.

☒ **CLASS #1a**: § 507(a)(1) - Wage and Commission Claims

**Unsecured Creditor:** Marc Justin Paraiso (pursuant to the Stipulation Resolving Debtor's Objection to Proof of Claim No. 1 Filed by Marc Justin Paraiso and Chapter 11 Plan Treatment of Claim [Docket No. 114] and the order approving the stipulation [Docket No. 116])

| Claim Amount (less paid to date) ☒ Actual ☐ Estimated | Interest Rate (if any) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
|---|---|---|---|---|---|---|
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| $1,706.25 | N/A | $1,706.25 | ☐ Monthly ☐ Quarterly | $ | $ | 1 months |

☐ **See Appendix**        for additional unsecured claims in Class #1:

    ☐ **CLASS #1(a)**: § 507(a)(4) **-** Wage and Commission Claims
    ☐ **CLASS #1(b)**: § 507(a)(5) – Employee Benefit Plan Contribution Claims
    ☐ **CLASS #1(c)**: § 507(a)(6) – Grain Producer and Fisherman Claims
    ☐ **CLASS #1(d)**: § 507(a)(7) – Consumer Deposit Claims

**E.  OTHER UNSECURED CLAIMS – CLASS #2.**

    ☐ There are no claims in **CLASS #2**.

    ☒ See Exhibit B for a list of all **CLASS #2** claimants and amount owed to each.

    1.  ☐ <u>**CLASS #2a**</u>:  Nominal Unsecured Claims.  These include "nominal" claims of $_____ or less, and any larger unsecured claims whose claimant agreed to reduce its claim to this amount.  Creditors are **not entitled to vote** to accept or reject the Plan.

        Creditors will be paid the nominal amount on the Effective Date, or as soon as practicable thereafter. Estimated total payments are $_____.

    2.  ☒ <u>**CLASS #2b**</u>:  General Unsecured Claims.  These are other unsecured claims that are not included in **CLASS #2a**, and will be paid as follows.  Creditors are **entitled to vote** to reject or accept the Plan.

        ☐ <u>Percent Plan</u>.  Each creditor in CLASS #2b will be paid _____% of its claim beginning the first relevant date after the Effective Date:

        a.  Over _____ years in equal ☐ monthly ☐ quarterly installments, due on the first day of each calendar month/quarter;

        b.  ☐ with interest at the rate of _____% per annum, or ☐ without interest; and.

        c.  The amount each creditor receives depends on the total amount of allowed claims in this class.

        ☒ <u>Pot Plan</u>.  Each member of CLASS #2b will be paid a pro rata share of a fund totaling <u>$6,000</u>, created by the Debtor's payment:

        a.  Pro rata means the entire fund amount divided by the total of all allowed claims in this class.

        b.  Payment amount is $<u>100</u> per ☒ month  ☐ quarter for a period of <u>60</u> months,

        c.  Payments will begin on (*date*): <u>February 1, 2026 (est.)</u>

        ☐ <u>Other</u>: **See Appendix** _____ for additional information about unsecured claims in Class #2:

**F.  SECURED CLAIMS – CLASS #3, CLASS #4 and Class #5.**

**CLASS #3 - Unimpaired Non-Insider Claims**. Creditors **are not entitled** to vote to accept or reject the Plan.  Until claims are fully paid, creditors retain their interest in the property securing the claim.  Treatment is:

☒ There are no claims in CLASS #3.

| ☐ **CLASS #3a** | **Secured Creditor:** |
|---|---|
|  | **Basis for secured status:** |
|  | **Priority of lien:** |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $ | $ | % | | $ | | $ | |

| **Address or Other Description of Collateral Securing Claim 3a:** |
|---|

| Value: | Valuation | ☐ Order on motion or stipulation  ☐ Declaration: Certified appraiser |
|---|---|---|

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                    Page 16                    **VZ SUBCHAPTER.V.PLAN**

| $ | **Method** | ☐ Other: |
|---|---|---|

☐ Additional comments relating to Class #3a:

**CLASS #4 - Impaired Non-Insider Claims**. Creditors **are entitled** to vote to accept or reject the Plan.  Until claims are fully paid, creditors retain their interest in the property securing the claim.  Treatment is:

☒ There are no claims in CLASS #4.

| ☐ **CLASS #4a** | **Secured Creditor:** |
|---|---|
| | **Basis for secured status:** |
| | **Priority of lien:** |
| | ☐ Lien is not modified in any way. |
| | ☐ Lien is modified as follows: |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $ | $ | % | | $ | | $ | |

| **Address or Other Description of Collateral Securing Claim 4a:** | | |
|---|---|---|
| **Value:** $ | **Valuation Method** | ☐ Order on motion or stipulation  ☐ Declaration: Certified appraiser<br>☐ Other: |

☐ Additional comments relating to Class #4a:

☐ **See Appendix ____** for more impaired secured claims. Label as Class #4d, #4e, etc.

**CLASS #5 - Insider Claims**. These are claims of persons defined in 11 U.S.C. §101(31).  Essentially, an insider is a person with a close relationship with the Debtor other than a creditor-debtor relationship.  Treatment is:

☒ There are no claims in CLASS #5.

| ☐ **CLASS #5a** | **Insider Secured Creditor:** |
|---|---|
| | **Basis for secured status:** |
| | **Priority of lien:** |
| | ☐ Lien is not modified in any way. |
| | ☐ Lien is modified as follows: |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $ | $ | % | | $ | | $ | |

| **Address or Other Description of Collateral Securing Claim 5a:** | | |
|---|---|---|
| **Value:** $ | **Valuation Method** | ☐ Order on motion or stipulation  ☐ Declaration: Certified appraiser<br>☐ Other: |

☐ Additional comments relating to Class #5a:

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                          Page 17                          **VZ SUBCHAPTER.V.PLAN**

☐ **See Appendix** _____ for more insider secured claims. Label as Class #5b, #5c, etc.

## G. EQUITY SECURITY AND OTHER OWNERSHIP INTERESTS

1. ☒ **Corporation** (*Check all that apply*)

   a. ☒ Governing Documents. ☒ Articles of Incorporation or ☐ Bylaws have been changed to include a provision prohibiting the issuance of nonvoting equity securities as required by 11 U.S.C. §1123(a)(6).

   b. ☒ Shares**.**   Under the Plan:

   ☒ Shareholders simply retain their shares of stock.
   ☐ Shareholders redeem shares and receive the following consideration:                    .

2. ☐ **Partnership** (*Check all that apply*)

   a. ☐ Governing Documents. ☐ Partnership Agreement and/or ☐ Bylaws have been changed to include a provision prohibiting the issuance of nonvoting equity securities as required by 11 U.S.C. §1123(a)(6).

   b. ☐ Identity of Partners.

      (1) ☐ General Partners.

         ☐ There are no general partners or
         ☐ There are general partners and their identities are:                    .

      (2) ☐ Limited Partners.

         ☐ There are no limited partners or
         ☐ There are limited partners and their identities are:

   c. ☐ Partnership Interests.

      ☐ Each partner's interest in the debtor will remain as it is now; or

      ☐ The interest of ☐ some or ☐ all partners changes under the Plan as follows:                    .

3. ☐ **Other Ownership Interests** (*Complete all sections*)

   a. Description of Ownership Interest (*other than corporation or partnership*).

   b. Identities of Owners:

   c. Changes.

      ☐ There are no changes to the description of ownership or identities of owners; or

      ☐ Changes to the description of ownership or identities of owners are:

## IX.   UNCLAIMED OR UNDELIVERABLE PLAN DISTRIBUTIONS.

Payments or distributions that are attempted under the Plan but remain unclaimed or undeliverable for six (6) months, will revest in the post-confirmation debtor free of restriction.  Any entitlement to distribution will be barred.

## X.   EFFECT OF CONFIRMATION.

A. **General Comments** [11 U.S.C. § 1141]

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the Plan, and any creditor, equity security holder, or general partner of the Debtor, even those who do not vote to accept the Plan.

Except as provided in the Plan, the entry of an order confirming the Plan vests all property of the estate in the Debtor and, pursuant to 11 U.S.C. § 362(c)(1), the automatic stay no longer applies to property of the estate.

However, the stay of § 362(a) continues to prohibit collection or enforcement of pre-petition claims against the Debtor and Debtor's property until the Debtor receives a discharge.  Section X.B. below provides the Debtor's intent regarding discharge.  If the Debtor does not seek a discharge, the discharge is deemed denied and the stay of § 362(a) terminates as to the Debtor and the Debtor's property upon entry of the order confirming the Plan.

B. **Discharge of Liability for Payment of Debts; Termination of Rights and Interests of Equity Security Holders and General Partners Provided for by the Plan**

1. ☐ No Discharge.  Pursuant to 11 U.S.C. § 1141(d)(3), Debtor is not eligible for a discharge, because

(*check all that apply*):

☐ the Plan provides for the liquidation of all, or substantially all, of the property of the estate.

☐ the Debtor will not engage in business after consummation of the Plan.

☐ the Debtor would be denied a discharge under 11 U.S.C. § 727(a) if the case were under chapter 7.

2. ☒ <u>Eligible for Discharge</u>.

   a. ☐ **Debtor Seeks Confirmation Under 11 U.S.C. § 1191(a).**

      ☐ <u>Debtor is an Individual</u>. On the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of the Plan, as provided in 11 U.S.C. § 1141(d)(1)(A). Pursuant to 11 U.S.C. § 1141(d)(2), the Debtor will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523(a), except as provided in FRBP 4007(c).

      ☐ <u>Debtor is a Partnership</u>. On the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, as provided in 11 U.S.C. § 1141(d)(1)(A).

      ☒ <u>Debtor is a Corporation</u>. On the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of the Plan, as provided in 11 U.S.C. § 1141(d)(1)(A). Pursuant to § 1141(d)(6), the Debtor will not be discharged from any debt of a kind specified in 11 U.S.C. § 523(a)(2)(A)-(B) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of Chapter 37 of title 31 or any similar State statute, or for a tax or customs duty with respect to which the debtor made a fraudulent tax return or willfully attempted in any manner to evade or to defeat such tax or such customs duty.".

   b. ☒ **Debtor Seeks Confirmation Under 11 U.S.C. § 1191(b)**. Pursuant to 11 U.S.C. § 1192, the court court shall grant the Debtor a discharge of all debts (i) provided in 11 U.S.C. § 1141(d)(1)(A), and (ii) allowed under 11 U.S.C. § 503 and provided for in the Plan, and shall do so as soon as is practicable after the Debtor completes all payments due within the first 3 years of this Plan or as otherwise provided in 11 U.S.C. § 1192. The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192, or (ii) which is excepted from discharge under § 523(a), except as provided in FRBP 4007(c).

3. ☒ <u>Additional Discharge Provisions</u>:

Creditors may not take any action to enforce either preconfirmation obligations or obligations due under the Plan, so long as the Reorganized Debtor is not in material default under the Plan.

As those claimants whose claims are not agreed upon by the parties (i.e., memorialized in a Plan treatment stipulation), if Reorganized Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 30-days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default.

The Debtor is in material default under the Plan if it fails within 60-days of the service of such notice of default to either: (i) to cure the default; or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

If the Debtor is in material default under the Plan, affected creditors may: (i) take any action permitted under bankruptcy or non-bankruptcy law to enforce the terms of the Plan; (ii) seek liquidation of nonexempt assets pursuant to §1191(c)(3)(B); (iii) seek to remove the Debtor as a DIP; and/or (iv) move to dismiss this case or to convert this case to Chapter 7 pursuant to §1112(b).

C. **Modification of the Plan.** Pursuant to 11 U.S.C. § 1193, the Debtor may modify the Plan.

D. **Final Decree.** Once the Plan has been consummated, a motion for final decree may be filed. Once a final decree is entered, the bankruptcy case will be closed. After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.

# XI.    APPENDICES OF ADDITIONAL CLAIMS THAT ARE NOT IDENTIFIED IN SECTIONS VIII.A. – VIII.F.

☐ **Appendix #1**: Additional Claim(s),  ☐ VIII.A  ☐ VIII.B  ☐ VIII.C  ☐ VIII.D  ☐ VIII.E  ☐ VIII.F

☐ **Appendix #2**: Additional Claim(s),  ☐ VIII.A  ☐ VIII.B  ☐ VIII.C  ☐ VIII.D  ☐ VIII.E  ☐ VIII.F

☐ **Appendix #3**: Additional Claim(s),  ☐ VIII.A  ☐ VIII.B  ☐ VIII.C  ☐ VIII.D  ☐ VIII.E  ☐ VIII.F

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

November 2020                Page 19                **VZ SUBCHAPTER.V.PLAN**

☐ **Appendix #4**: Additional Claim(s),  ☐ VIII.A  ☐ VIII.B  ☐ VIII.C  ☐ VIII.D  ☐ VIII.E  ☐ VIII.F

☐ **Appendix #5**: Additional Claim(s),  ☐ VIII.A  ☐ VIII.B  ☐ VIII.C  ☐ VIII.D  ☐ VIII.E  ☐ VIII.F

☐ **Appendix #6**: Additional Claim(s),  ☐ VIII.A  ☐ VIII.B  ☐ VIII.C  ☐ VIII.D  ☐ VIII.E  ☐ VIII.F

☐ **Appendix #7**: Additional Claim(s),  ☐ VIII.A  ☐ VIII.B  ☐ VIII.C  ☐ VIII.D  ☐ VIII.E  ☐ VIII.F

☐ **Appendix #8**: Additional Claim(s),  ☐ VIII.A  ☐ VIII.B  ☐ VIII.C  ☐ VIII.D  ☐ VIII.E  ☐ VIII.F

Date: <u>December 17, 2025</u>

<u>/s/ Roksana D. Moradi-Brovia</u>
Signature of attorney for Debtor

<u>Roksana D. Moradi-Brovia</u>
Printed name of attorney for Debtor

---

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 17609 Ventura Blvd., Suite 314, Encino, CA 91316.

A true and correct copy of the foregoing document entitled: **SUBCHAPTER V PLAN OF REORGANIZATION OF DEBTOR [11 U.S.C. §§ 1123, 1181, 1189, 1190]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/17/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 12/17/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 12/17/2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor's principal via email - not listed for privacy reasons

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/17/2025 | Gabriela Hansen | /s/  Gabriela Hansen |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*November 2020*                                        Page 21                                **VZ SUBCHAPTER.V.PLAN**

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) [CONTINUED]</u>:**

- <u>Counsel for D. Johnson</u>: **Yana G Henriks**  yhenriks@law-mh.com, rmcmurray@law-mh.com;sridgill@law-mh.com;1457576420@filings.docketbird.com;ndilts@law-mh.com;cpinto@law-mh.com;dpham@law-mh.com;lburdeos@law-mh.com;paralegal@law-mh.com;apham@law-mh.com;dgharibian@law-mh.c
- <u>Subchapter V Trustee</u>: **Gregory Kent Jones (TR)**  gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
- <u>Counsel for Debtor</u>: **Roksana D. Moradi-Brovia**  Roksana@rhmfirm.com; matt@rhmfirm.com; sloan@rhmfirm.comom; nina@rhmfirm.com; david@rhmfirm.com; priscilla@rhmfirm.com; gabriela@rhmfirm.com; rosario@rhmfirm.com; rebeca@rhmfirm.com; LA@rhmfirm.com
- <u>Counsel for US Trustee</u>: **Kelly L Morrison**  kelly.l.morrison@usdoj.gov
- <u>Counsel for DOL</u>: **Nisha Parekh**  parekh.nisha@dol.gov
- <u>Counsel for Debtor</u>: **Matthew D. Resnik** Matt@rhmfirm.com, roksana@rhmfirm.com; sloan@rhmfirm.com; nina@rhmfirm.com; david@rhmfirm.com; priscilla@rhmfirm.com; gabriela@rhmfirm.com; rosario@rhmfirm.com; rebeca@rhmfirm.com; LA@rhmfirm.com
- **United States Trustee (LA)**  ustpregion16.la.ecf@usdoj.gov


**2. SERVED BY UNITED STATES MAIL [CONTINUED]:**

Judge's Copy:
Hon. Vincent P. Zurzolo
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012


ALL PRIORITY CREDITORS OF THE ESTATE (other than those served via NEF):

Emloyment Development Dept.
Bankruptcy Group MIC 92E
P.O. BOX 826880
Sacramento, CA 94280-0001

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Franchise Tax Board
Attn: Bankruptcy Unit
P.O. Box 2952
Sacramento, CA 95812-2952

California Dept of Tax and Fee Admi
Special Ops, MIC 29
PO Box 942879
Sacramento, CA 94279-0005

ALL REMAINING CREDITORS OF THE ESTATE + PARTIES FOR NOTICE (other than those served via NEF):

U. S. Securities and Exchange
Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite
900
Los Angeles, CA 90071-9591

Attorney General
United States Department of
Justice
Ben Franklin Station
P. O. Box 683
Washington, DC 20044

Civil Process Clerk

United States Attorney's Office
Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA 90012

Aaron Bradford
1142 E. 49TH Street
Los Angeles, CA 90011

Abel Martinez
c/o Zev Abramson, Esq.
Abramson Labor Group
1700 W Burbank Blvd Burbank,
CA 91506

Andrew Espinoza
2838 Glenn Ave.
Los Angeles, CA 90023

Anthony Arrellano
44413 Benald Street
Lancaster, CA 93535

Brayan Hernandez
225 S. GRAND AVE., #501
Los Angeles, CA 90012

Bryan Hernandez
10502 Lyndora Street
Norwalk, CA 90605

Bryson Parham
c/o Levin & Nalbandyan
11132 Ventura Blvd.
Studio City, CA 91604

Daniel Sanchez
8014 Puritan Street
Downey, CA 90242

Destini Cummings
2129 Myrtle Ave.
Long Beach, CA 90805

Devvonnair R. Johnson
c/o Justice Turner & Yana
Henriks
McMurray Henriks, LLP
811 Wilshire Boulevard, Suite
1640
Los Angeles, CA 90017

Devvonnair R. Johnson
c/o Rene M. Maldonado, Esq.
1801 Century Park E, Ste 840
Los Angeles, CA 90067-2349

Eric Solorzano
7431 Marbrisa Ave.
Walnut Park, CA 90255

Francisco Ortiz
3012 Hope Street
Huntington Park, CA 90255

George Gonzalez
c/o Katherine Hogue, Esq.
Lawyers for Employee &
Consumer Rig
3500 West Olive Ave, Third
Floor
Burbank, CA 91505

Guillermo Espinoza
2838 Glenn Ave.
Los Angeles, CA 90023

Harvey Dennis Collazo Gaxiola
dba Robin Hall, Esq.
4100 West Alameda Avenue
Third Fl
Burbank, CA 91505

Jayson Bonilla
12641 Harris Ave.
Lynwood, CA 90262

Jocelyn Parham
4900 Castana Ave., #17
Lakewood, CA 90712

Juan Trejo
647 N. Cummings
Los Angeles, CA 90033

Kenneth Garcia
1742 W, Vernon Ave,
Los Angeles, CA 90062

Kevin Grigsby
2408 W. Bennett
Compton, CA 90220

Kevin Salvatierra
12708 York Ave.
Hawthorne, CA 90250

Malik Beasley
3325 Jasper Road Apt 92
Barstow, CA 92311

Peter Espinoza
8401 Hickory Street
Los Angeles, CA 90001

Randolf Clark
7513 Norton Ave., Apt 2
Los Angeles, CA 90046

Rashadd Witfield
7152 Elsa Ct.
Fontana, CA 92336

Ricardo Espinoza, Jr.
c/o Harout Messrelian Esq
Messrelian Law Inc.
101 N. Brand Blvd., Suite 1450
Glendale, CA 91203

Robert Lindsey
837 W. Beach Ave., Apt. 7
Inglewood, CA 90302

Ryan Sherman
434 E. Spruce Ave., Unit 108
Inglewood, CA 90301

Shlomi Meiri & Adie Meiri
Herbarium
979 N La Brea Ave
Los Angeles, CA 90038

State Compensation Insurance
Fund
P.O. Box 8192
Pleasanton, CA 94588

Tyon Parks
c/o David Lee Law, APC

515 S. Flowers Street, Suite
1900
Los Angeles, CA 90071

Tyron Parks
c/o Brandon M. Banks, Esq.
Brandon Banks Law, APC
3223 Webster Street
San Francisco, CA 94123

Virginia Bonilla
c/o Katherine Hogue, Esq.
Lawyers for Employee &
Consumer Rig
3500 West Olive Ave, Third
Floor
Burbank, CA 91505

Vitarika Blackburn
143 E. 109th Place
Los Angeles, CA 90061

Welner Javier Hernandez
1437 1/2 W. 24th Street
Los Angeles, CA 90007

Demontay Devin Kyle
2060 E Lucien Street
Compton, CA 90222

Keishon Bradford
c/o Omid Nosrati, Esq.
Law Office of Omid Nosrati
1801 Century Park East, Ste.
840
Los Angeles, CA 90067

Frank Cephas
1770 W. Arrow Route #101
Upland, CA 91786
Marc Justin Paraiso
c/o Michael Righetti, Esq
Righetti Glugoski, P.C.
2001 Union Street, Suite 400
San Francisco, CA 94123

Marc Justin Paraiso
16502 Casa Grande Ave
Unit 217
Fontana, CA 92336

Theresa Panton
c/o Michael Righetti, Esq
Righetti Glugoski, P.C.
2001 Union Street, Suite 400
San Francisco, CA 94123

Bryson Parham
c/o State of Calif. Dept of Industr

Labor Commissioner's Office
1500 Hughes Way, Ste. C-202
Long Beach, CA 90810

Bryson Parham
12900 Lakewood Blvd #16

Downey, CA 90042
Brian Perez
c/o Navid Kanani, Esq.
JS Abrams Law PC
20501 Ventura Blvd., Suite 165
Woodland Hills, CA 91364

Ruben Lopez
c/o Jason J. Buccat, Esq.
Downtown LA Law Group, LLP
612 S Broadway, Ste 600
Los Angeles, CA 90014

RETURNED MAIL:

Jhulisa Turcios
8712 Dalton Ave.
Los Angeles, CA 90047
[Returned Mail]

Anthony Sanchez
1142 W. Vernon Ave.
Los Angeles, CA 90062
[Returned Mail]

Cipriano Joe Gutierrez
11401 Central Ave
Chino, CA 91710
[Returned Mail]

Duncan Carter
8100 S. New Hampshire Ave.
Los Angeles, CA 90044
[Returned Mail]

Kevin Garriga
1021 Locust Ave.
Long Beach, CA 90813
[Returned Mail]

Jean Carlos Reyes
12136 Chesterton Street
Whittier, CA 90605
[Returned Mail]

Jay Marquise Estes
13095 Navajo Road, Apt 4
Apple Valley, CA 92308
[Returned Mail]

Tyron Parks
c/o Brandon M. Banks, Esq.
Brandon Banks Law, APC
340 South Lemon Ave., Suite 1409
Walnut, CA 91789
[Returned Mail]

Jerome Benefield
1214 E. 70th Street, Apt. C
Los Angeles, CA 90001
[Returned Mail]

Malik Beasley
3325 Jasper Road Apt 92
Barstow, CA 92311
[Returned Mail]

Khalee Nathan
c/o Abramson Law Group

11846 Ventura Blvd., Suite 100
Studio City, CA 91604
[Returned Mail]

Tyron Parks
c/o Brandon M. Banks, Esq.
Brandon Banks Law, APC
340 South Lemon Ave., Suite 1409
Walnut, CA 91789
[new adress above]

Bryson Parham
c/o Levin & Nalbandyan
811 Wilshire Blvd., Suite 800
Los Angeles, CA 90017
[new address above]

Ruben Lopez
c/o Jason J. Buccat, Esq.
Downtown LA Law Goup, LLP
910 S. Broadway
Los Angeles, CA 90015
[new address above]

Virginia Bonilla
c/o Katherine Hogue, Esq.
Lawyers for Employee & Consumer
Rig
4100 West Alameda Avenue Third Fl
Burbank, CA 91505
[new address above]

George Gonzalez
c/o Katherine Hogue, Esq.
Lawyers for Employee & Consumer
Rig
4100 West Alameda Avenue Third Fl
Burbank, CA 91505
[new address above]

Abel Martinez
c/o Zev Abramson, Esq.
Abramson Labor Group
11846 Ventura Blvd. Suite 100
Studio City, CA 91604
[new address above]

Ricardo Espinoza, Jr.
c/o Harout Meerelian Esq
Meerelian Law Inc.
500 N. Central Ave., Suite 840
Glendale, CA 91203
[new address above]

Harvey Dennis Collazo Gaxiola
dba Robin Hall, Esq.
4100 West Alameda Avenue Third Fl
Burbank, CA 91505
[Returned Mail]

Randolf Clark
7513 Norton Ave., Apt 2
Los Angeles, CA 90046
[Returned Mail]

Jocelyn Parham
4900 Castana Ave., #17
Lakewood, CA 90712
[Returned Mail]

Marc Justin Paraiso
c/o Michael Righetti, Esq
Righetti Glugoski, P.C.
220 Halleck Street, Suite 220
San Francisco, CA 94129
[New Address Above]

Theresa Panton
c/o Michael Righetti, Esq
Righetti Glugoski, P.C.
220 Halleck Street, Suite 220
San Francisco, CA 94129
[New Address Above]

Malik Beasley
3325 Jasper Road Apt 92
Barstow, CA 92311
[Returned Mail]

Randolf Clark
7513 Norton Ave., Apt 2
Los Angeles, CA 90046
[Returned Mail]

Rashadd Witfield
7152 Elsa Ct.
Fontana, CA 92336
[Returned Mail]